JOSEPH R. POWLOWSKI, Individually and on Behalf of All Others Similarly Situated, Appellants, v ROY J. WULLICH, as Sheriff of Genesee County, et al., Respondents.

Fourth Department, July 13, 1984

APPEARANCES OF COUNSEL

*Monroe County Legal Assistance Corporation* (*Ian DeWaal* of counsel), for appellants.

*John Rizzo, County Attorney,* for respondents.

**OPINION OF THE COURT**

HANCOCK, JR., J. P.

Plaintiffs, all former detainees in the Genesee County Jail, brought this class action in 1975 complaining that their civil rights as well as the rights of all other detainees had been and were being violated by defendants in their administration of the jail. The class has been certified, and, as a result of prior proceedings, much of the relief requested by plaintiffs has been ordered or agreed to by formal stipulation.[1] Plaintiffs' unresolved claims for relief

---

1. At the time that this action was commenced and the class certified in February, 1975, the court issued a preliminary injunction restraining defendants from retaliating against the named detainees and from interfering with plaintiffs' access to counsel. Further preliminary injunctions were issued restraining defendants from restricting the pretrial detainees' visitors to immediate family members over 18 and from limiting the detainees' correspondence and access to newspapers (*Powlowski v Wullich,* 81 Misc 2d 895). On May 26, 1976, plaintiffs' motion for partial summary judgment was granted to the extent of permanently enjoining defendants from prohibiting plaintiffs from receiving reading material from any source and from limiting visitors to immediate family members and children over 18 years of age. In September, 1981, the parties reached an agreement on all remaining issues except the adequacy of medical services and recre-

were referred to trial, i.e., those based on their contentions that the absence of facilities and arrangements for recreation and exercise and the inadequate medical care and services provided in the jail deprived them of their rights under the Federal and State Constitutions and under the "Minimum Standards and Regulations for Management of County Jails and Penitentiaries" (9 NYCRR subtit AA) promulgated by the New York Commission of Correction.

After a four-day trial without a jury the court dismissed these remaining causes of action and, in so doing, adopted *in toto* as its own the detailed findings of fact and conclusions of law submitted by defendants. It held that neither the claimed absence of adequate recreational and exercise facilities and arrangements nor the allegedly inadequate medical care and services amounted to punishment of pretrial detainees under the controlling decision of the Supreme Court in *Bell v Wolfish* (441 US 520) and that, therefore, there was no Federal due process violation. With respect to the recreational and medical complaints under the State due process clause (NY Const, art I, § 6), it discerned no violation concluding under the "balancing test" established in *Cooper v Morin* (49 NY2d 69) that the claimed harm caused by the conditions imposed was outweighed by the resultant benefit to the government. The court found that defendants were in substantial compliance with the Correction Commission standards and regulations pertaining to medical care and services (9 NYCRR part 7010) but not with those pertaining to recreation (9 NYCRR part 7028). It held, however, that a violation of minimum standards for recreation did not constitute, without more, a due process violation under either the State or Federal Constitution and that it, absent proof of constitutional violations, lacked power to interfere with the administration of the jail or to compel compliance with such minimum standards. Finally, the court determined that plaintiffs were not entitled to attorneys' fees under State or Federal law. Plaintiffs have appealed.

ational facilities. As a result of this stipulation, plaintiffs obtained much of the relief sought in their complaint including discontinuance of censorship of and limitations on incoming or outgoing mail, and implementation of contact visitation. The court in the judgment now on appeal approved the partial stipulation of settlement; this portion of the judgment is not in issue.

There should be a modification. For reasons hereinafter stated, we agree with plaintiffs to this extent: that the recreation and exercise facilities and arrangements are so deficient as to constitute violations of the Federal and State due process clauses; that the court erred in dismissing that aspect of the complaint; and that plaintiffs are entitled to attorneys' fees under section 1988 of title 42 of the United States Code. We hold, however, that the court properly refused to direct compliance with the Correction Commission standards pertaining to recreation. Finally, we conclude, as did the court, that the medical care and services are not so wanting as to violate plaintiffs' State and Federal due process rights.

## I

The Genesee County Jail, a two-story structure located in Batavia and built in 1902, is operated and maintained by the Sheriff and a jail staff consisting of a chief deputy, nine deputies and five correction officers. The jail has a capacity for 32 prisoners and consists of four cell blocks: two located on the first floor for sentenced prisoners and two on the second floor for pretrial detainees. In the basement are rooms for laundry and contact visitation.

A cell block consists of a row of eight cells, each of which has a barred door opening onto a common corridor, seven feet in width, which extends for 48 feet along the row of cells. This corridor or "day room" contains two picnic tables, benches and a shower stall. Except when he is locked inside his cell from 11:00 P.M. until 7:00 A.M., an inmate has a choice of staying in his cell or the day room. He remains confined constantly in one or the other, however, unless he is at court, has visitors, or is receiving medical care. A cell is 6 feet wide and 8 feet long and contains a bed, a toilet and a sink. It has three solid walls and a barred entrance comprising the fourth wall. Witnesses describe the atmosphere in the cell block as hot, smoky and stuffy.

The outer boundary of the day room is a barred partition and between it and the prison wall is a four-foot wide corridor or catwalk. The only natural illumination reaching the cell block is the diffused light coming through translucent blocks in the prison wall through which it is

impossible to see out. By looking through the bars from inside the day room a detainee can watch a television set positioned on the outer wall of the catwalk.

Most of the detainees are held on charges for traffic infractions and misdemeanors and most are released within a matter of days (e.g., in 1980, 42% spent less than 2 days at the facility, 70% were released within 10 days, 86% were gone within 30 days and 93% were released within 60 days). In some cases, however, they are jailed for long periods (e.g., plaintiffs Long, Sumeriski and Vagg were held for 5 months and plaintiff Powlowski for 22 months). Statistics show a trend from 1975 to 1980 of increasingly longer holding periods for pretrial detainees.

There is no outdoor recreation. A report prepared by the county legislature after a study of the jail has this to say about indoor recreation:

*"active recreation*

"Like many other facilities across the nation, the Genesee County Jail is operating solely as a residential facility. The structure has virtually no space which can be allocated to programmatic functions. All recreation is limited to the inmate corridor. The limited area in which inmates may engage in physical exercise restricts him to walking.

*"passive recreation*

"The jail is mainly limited to passive recreation programs such as playing cards, reading, games and picture puzzles. Inmates have access to cards, games and puzzles. Inmates may utilize the tables and seats located in the inmate corridor. These tables may accommodate up to approximately four individuals at a given time, or the inmate may prefer to read or occupy himself in his individual cell.

"Televisions are provided by the County and a 'piped in' commercial radio channel furnishes broadcasts of sporting events and significant news events."

In evaluation reports made in 1978, 1980 and 1981, the State Commission of Correction found that the jail did not comply with provisions of the minimum standards pertaining to recreation (9 NYCRR part 7028) in that, among other things, there were no indoor or outdoor recreation

areas as required by section 7028.2 and prisoners were not receiving minimum periods of indoor and outdoor recreation as provided by sections 7028.1, 7028.3 and 7028.7. The Commission noted in its reports that the recreation activities possible within cell corridors and individual housing units could not satisfy its minimum standard of one hour per day (9 NYCRR 7028.1). The lack of recreation and exercise, according to plaintiffs, produced lethargy and boredom and resulted in mental and physical deterioration.

Sheriff Call has given favorable consideration to using space in the basement for recreation, and, he testified, there are areas there which could be converted for a relatively modest sum into exercise or recreation rooms where equipment such as a universal gym, mats, and a pool table could be located.[2] At the time of the court's decision, county officials were in the process of formulating a plan for the replacement or remodeling and improvement of the jail which would include provisions for recreation and exercise facilities.[3]

---

2. Sheriff Call testified as follows:

"Q. Okay. Are there areas in the basement which could be cleared out currently and used for recreation areas without doing a major renovation to the building?

"A. We have considered a small corner down in the — I'll put a Y in the area where we're considering for universal gyms, maybe some mats, things of that nature, to bring the fellows down to — to allow them to exercise for a period each day.

"Q. Okay. Now, are there any other areas in the basement that with some more renovation could be used for indoor recreation that are not being currently used for other functions, necessary functions?

"A. There is an area that I have thought about. It would take some substantial changes and I'll put a Z there, which is primarily storage of old records and files. They could be moved up into the attic, and that area possibly used. There would have to be some — some construction, constructional changes in order. to allow that to happen.

"Q. Okay. There wouldn't have to be major constructional changes for that?

"A. No, it would — I think you could make some minor changes, maybe a couple thousand dollars at the most, and we'd have to do something with this area in here.

"Q. Okay. You're pointing to another area. Could you mark that with a ZZ. Okay. And how much space would you say would be made available for indoor recreation if the areas labeled Z and ZZ were rehabilitated?

"A. Square feet? Let's see —

"Q. If you can estimate.

"A. Probably about thirty feet by ten to fifteen — fifteen feet, I'd say. Thirty by fifteen."

3. When the trial court made its decision, the plans for enlargement and renovation of the jail had not yet been approved. Defendants in their brief state:

"Following the decision of the Court at the trial level, the Genesee County Legislature completed its final plans for the expansion and renovation of the Genesee County Jail, in order to bring the facility in conformance with the standards and regulations of the New York State Commission on Corrections.

"The project calls for an expenditure of 3.25 million dollars including separate indoor and outdoor recreation areas, a law library and a separate, private medical examining

The jail has no full-time medical personnel. Five of the 14 guards (deputies and correction officers) have first-aid training; the others have no medical training. They are responsible for medical screening of new admittees, transmitting to the physician inmates' requests for medical treatment, dispensing medications in accordance with the physician's instructions, and, on some occasions, determining whether an emergency exists warranting immediate transport to a hospital. The jail has contracted with Bruce Baker, M.D., a board-certified family practitioner, to take telephone calls from guards and to be "on call" for emergencies as well as to visit the jail two or three times a week to see inmates who have requested medical care. Joseph Langen, Ph.D., a psychologist and an employee of the Genesee County Mental Health Clinic, is available for both "on call" and "on request" service and, since 1977, has visited the jail once weekly. The jail has arrangements with two local hospitals to provide emergency care. Doctors Baker and Langen refer patients when necessary to dentists, dermatologists or other specialists, to the staff of the county mental health clinic, and to alcoholism counselors.

When a detainee is first admitted, the admitting officer (a guard) questions him about his health and completes an inmate health screening form. If a new admittee says that he is taking medication, the guard contacts Dr. Baker for instruction; if he appears to be extremely intoxicated, the officer contacts Dr. Baker or sends him to a hospital.

Since 1981 the practice has been for Dr. Baker to examine each new admittee if he is still in the jail when Dr. Baker makes his next regular visit. Until then the admittee is placed in the general population. Dr. Baker's admission examination consists of a review of the screening form, a blood pressure reading, visual observation, and a check for heart and lung irregularities with a stethoscope. An inmate who at any time wishes to see the doctor may notify any guard who, on returning to the jail office, posts a medical request form with the inmate's name and complaint for review by Dr. Baker on his next scheduled visit, when he will read the notice and determine what medical

room * * *
   "Ground is expected to be broken by June 1, 1984, and the engineers estimated completion date is eleven months after breaking ground, or approximately May 1, 1985."

treatment is required. One inmate testified that he had to wait six weeks for dental care and another complained of a long wait before he was treated for a rash by a dermatologist. If the guard believes that the need is urgent, he may call Dr. Baker for immediate assistance or contact a hospital emergency room.

The jail keeps the following records concerning each inmate: an admissions screening form; a medical request form on which the guard notes the inmate's request for care, the balance of which is filled out by the physician after seeing the inmate; a medication chart showing all medications dispensed; and records of all hospital visits and referrals to specialists. The defendants concede that a small number of medication charts have blank spaces indicating a failure either to give or to record the medication. Also, a few of the forms are not dated.

Although the medical policies and procedures are not formal or in writing, in many respects they meet the American Medical Association Standards for Health Services in Jails, May 14, 1979 (submitted by plaintiffs as an exhibit); they fail to comply, however, in certain particulars including lack of routine laboratory or diagnostic tests to detect communicable diseases, failure to have a pharmaceutical formulary specifically developed for the facility, and failure to give medical training to all officers who receive and transmit requests for medical care or dispense medications. The medical care system also generally conforms to the State Commission standards concerning health services (9 NYCRR part 7010) but it does not follow certain recommended — but not mandated — practices such as isolating a newly admitted detainee from the general population until he has been examined by a physician and training all facility personnel in first aid and emergency life-saving techniques.

## II

██ Before discussing the legal rights of detainees and the obligations of the officials responsible for the jail, it is well to repeat what we have been so often told: that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform" (*Procunier v Martinez,* 416 US 396, 405), that our "inquiries spring from

*constitutional requirements* and that judicial answers to them must reflect *that fact* rather than a court's idea of how best to operate a detention facility" (*Bell v Wolfish,* 441 US 520, 539, *supra;* emphasis added; see *Wilkinson v Skinner,* 34 NY2d 53, 62). With this in mind, we address first plaintiffs' request for an order compelling compliance with the State Commission minimum standards pertaining to medical care and recreation (9 NYCRR parts 7010, 7028). Because of the limitations on the power of the judiciary in such matters, we think it is clear, as the trial court has held, that enforcement of these standards is a matter for the Commission of Correction or others in the executive branch of government and not for the courts (see *Jones v Beame,* 45 NY2d 402, 408; see, also, *Wilkinson v Skinner, supra,* p 63, n 7).[4] For, as stated, a court may intervene only if it finds violations of constitutional dimension, and while the State Commission minimum standards are certainly relevant, it by no means follows that what the State Commission may have established as a minimum for a given practice or condition is the same as the minimum that a court may find to be constitutionally acceptable. The court therefore properly denied this aspect of plaintiff's requested relief.

■ Turning to plaintiffs' rights as detainees under the Federal and State Constitutions, we observe at the outset that the constitutional prohibitions of "cruel and unusual punishments" in the Eighth Amendment of the United States Constitution and section 5 of article I of the New York Constitution are inapplicable. Plaintiffs are not convicted prisoners but persons charged with crimes who are incarcerated to assure their presence at trial. Scrutiny under the Eighth Amendment and its New York State

---

**4.** The cases cited by plaintiffs for the general proposition that an administrative agency is bound by its own rules and regulations are beside the point. They do not involve actions like the one here where plaintiffs in a class action request declarations that the administrators are bound by specified standards and seek broad directives that they must in the future follow a specific course of conduct and discharge their duties in a certain way. Rather, the cases cited (e.g., *Matter of Frick v Bahou,* 56 NY2d 777, an article 78 proceeding where the Civil Service Commissioner graded petitioner's examination in contravention of the Commission's own rules and regulations; and *Matter of Sinclair v Smith,* 97 AD2d 953, a CPLR article 78 proceeding in which a prisoner claimed that an adjustment committee had violated a specific regulation in imposing a sanction) involve claims of past specific injuries to individuals or violations of their rights where the source of the specified right violated or duty breached is found in a particular rule or regulation.

counterpart is thus inappropriate since the State "does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law" (*Ingraham v Wright,* 430 US 651, 671-672, n 40, quoted in *Bell v Wolfish,* 441 US 520, 535, n 16, *supra; accord Lock v Jenkins,* 641 F2d 488, 490-491; *Campbell v Cauthron,* 623 F2d 503, 505). It follows that we may not, as defendants would have us, apply criteria used in considering claims of cruel and unusual punishment, e.g., whether the practice complained of results in "unnecessary and wanton infliction of pain" (*Gregg v Georgia,* 428 US 153, 173) or, with respect to medical care, whether the care evinces "deliberate indifference to serious medical needs of prisoners" (*Estelle v Gamble,* 429 US 97, 104).[5]

The proper gauges for testing the constitutional claims of detainees are the due process clauses of the State and Federal Constitutions and the controlling decisions of *Bell v Wolfish* (*supra*), defining the rights of detainees under Federal due process clause (US Const, 5th amdt)[6] and *Cooper v Morin* (49 NY2d 69, *supra*) pertaining to the claims of detainees under the New York State Constitution (NY Const, art I, § 6). In any consideration of such claims it must be remembered that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by * * * our penal system" (*Price v Johnston,* 334 US 266, 285).

In evaluating conditions of pretrial detention under the Federal due process clause, the "inquiry is whether those conditions amount to punishment of the detainee" (*Bell v Wolfish, supra,* p 535). Where there is no expressed intent to punish, the question turns on whether "a particular condition or restriction of pretrial detention is reasonably

**5.** Although the court makes no reference to *Estelle v Gamble* (429 US 97) in its decision, it apparently adopted the "cruel and unusual punishment" standard from *Estelle.* Defendants in their trial brief argued that the *Estelle* standard should apply and in the proposed findings used language derived from that case. As noted, the court adopted in full and without change the findings proposed by defendants.

**6.** Because *Bell v Wolfish* (441 US 520) involves challenges to conditions at a Federally operated facility, the Supreme Court applied the due process clause in the Fifth Amendment to the United States Constitution. Here, we are concerned with conditions at a State facility and thus consider the requirements of Federal due process — as interpreted in *Bell* — which apply to the State through the Fourteenth Amendment.

related to a legitimate governmental objective" (*Bell v Wolfish, supra,* p 539) — if so, it does not amount to punishment. However, "if a restriction or condition is not reasonably related to a legitimate goal — if it is arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment" (*Bell v Wolfish, supra,* p 539). Legitimate governmental interests are insuring a detainee's presence at trial and those interests which "stem from [the] need to manage the facility in which the individual is detained" (*Bell v Wolfish, supra,* p 540).

In *Cooper v Morin* (49 NY2d 69, *supra*) the Court of Appeals concluded that the State due process clause accords greater protection for pretrial detainees than the Federal Constitution as interpreted by the Supreme Court in *Bell v Wolfish* (*supra*) and held: "In our view what is required is a balancing of the harm to the individual resulting from the condition imposed against the benefit sought by the government through its enforcement" (*Cooper v Morin, supra,* p 79). The State's interests which may be considered are limited to those arising from the "only legitimate purpose for pretrial detention[:] * * * to assure the presence of the detainee for trial" (*Cooper v Morin, supra,* p 81). Budgetary constraints alone cannot justify deprivation of the detainees' fundamental rights (see *Cooper v Morin, supra,* pp 81-82).

■ In this legal framework we examine first plaintiffs' claims pertaining to lack of recreation and exercise under the Federal due process clause. It is undisputed that the jail contains no area for indoor or outdoor recreation and exercise, and that the detainees are confined for 24 hours per day to the dimly lit and stuffy barred area of the cell block (eight cells and the adjacent corridor or "day room") except when released for special reasons such as court attendance. There is no question that the prisoners do not have the benefit of one hour per day of recreation as required by the State Commission minimum standards (9 NYCRR 7028.1) for no period at all is provided, and the Commission has cited defendants for this and other violations of the standards. We find that under these circumstances a detainee sustains a significant curtailment of the

opportunities for exercise and recreation that a person might normally and reasonably expect to enjoy.

In subjecting these conditions and practices to constitutional analysis in light of *Bell,* the question is whether the almost total deprivation of exercise and recreation opportunities "is reasonably related to a legitimate governmental objective" (*Bell v Wolfish, supra,* p 539). If it is not, i.e., "if it is arbitrary or purposeless[,] a court may permissibly infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees" (*Bell v Wolfish, supra,* p 539). Our search of the record shows that defendants have failed to come forward with evidence of any legitimate governmental objective justifying this deprivation.

The obvious explanations are the space limitations built into the 82-year-old structure and budgetary constraints imposed by the county legislature. The jail, we are told, is to be renovated and enlarged so that areas for indoor and outdoor recreation will eventually be provided. But no reason has been offered for a continuation of the present practices and conditions which afford the prisoners *no* opportunities for recreation or exercise beyond what they can find to do within the cramped confines of their cell block. On the contrary, the defendant Sheriff has stated that there are rooms in the basement which could be converted at modest expense to recreation or exercise areas. Defendants have suggested no security concerns or similar reasons for not using this space as a temporary measure to afford the detainees some minimum opportunities for recreation and exercise until the renovation project is complete, and, indeed, the Sheriff's testimony indicates that there are no such reasons. And, as noted, the extra cost involved in affording inmates their rights is not per se an acceptable excuse for failing to do so (see *Cooper v Morin, supra,* pp 81-82).

We hold, then, in view of the circumstances here, including, in particular, the constant confinement of the detainees in their cell block, that the practice of depriving them of exercise and recreation constitutes punishment under the *Bell* test and that their rights under the due process clause of the Fourteenth Amendment have been violated

(accord *Campbell v Cauthron,* 623 F2d 503, 507, *supra,* and *Parnell v Waldrep,* 511 F Supp 764, 770, holding that lack of recreation and exercise violates detainees' Federal due process rights under the *Bell* standard; and see *Lareau v Manson,* 651 F2d 96, 100-101, 102-105).[7]

If, as we hold, the recreation and exercise deprivation violates the Federal standard, it, a fortiori, must fail the more stringent balancing test prescribed for violations of our State due process clause (NY Const, art I, § 6) in *Cooper v Morin (supra).* As pointed out, there is no showing that the harm to the prisoners from the deprivation is offset by any countervailing governmental benefit as a measure which is "reasonable and necessary to the maintenance of security" (*Cooper v Morin, supra,* p 81) or needed to "assure the presence of the detainee for trial" (*Cooper v Morin, supra,* p 81) — the only legitimate purpose for pretrial detention (*Cooper v Morin, supra*). Thus, we hold that under both the State and Federal due process clauses, plaintiffs' rights have been violated.

■ Turning to the issue of medical care, it is undisputed that a prisoner, who "must rely on prison authorities to treat his medical needs" (*Estelle v Gamble, supra,* p 103), has a fundamental right to "reasonable" (*Jones v Diamond,* 636 F2d 1364, 1378) and "adequate" (*Lock v Jenkins,* 464 F Supp 541, 553, mod on other grounds 641 F2d 488) medical care. Here, the trial court found no evidence that the detainees' health had been adversely affected as a result of any of the medical procedures. He reviewed each procedure complained of, found each to be adequate, and concluded that the expanded medical care system proposed by the plaintiffs was unnecessary to maintain the health of the detainees. The court's conclusions are fully supported by the record, and we find the system to be adequate. Although the law does not require defendants to provide optimum or better than adequate care, we note that they have made and are making substantial improvements in

---

7. In *Cooper v Morin* (49 NY2d 69) the court found no Federal due process violation arising from the denial of contact visitation. *Cooper* is distinguishable from the case at bar on the ground that there the court found that the denial was "reasonably related to a legitimate governmental objective" (*Cooper v Morin, supra,* p 77) based on proof of legitimate security concerns; here, in contrast, there is no proof of a legitimate governmental purpose for the deprivation.

the health care system. In view of our finding that plaintiffs are not deprived of their right to adequate medical care, we need not reach the questions of whether there is a legitimate governmental objective for the defendants' actions (see *Bell v Wolfish,* 441 US 520, *supra*) and whether the claimed harm to the prisoners from the deprivation is offset by a countervailing governmental benefit (*Cooper v Morin, supra*). We hold then that plaintiffs, in their contention regarding medical care, have failed to prove a due process deprivation under *Bell* or *Cooper (supra).*

### III

On the authority of *Matter of Johnson v Blum* (58 NY2d 454) plaintiffs are entitled to attorneys' fees under section 1988 of title 42 of the United States Code. We have held in this appeal that defendants' practices of depriving pretrial detainees of recreation and exercise under all of the circumstances including their constant confinement to the cell block violate plaintiffs' constitutional rights under the Federal and State due process clauses. In prior motions plaintiffs have been successful in obtaining less restrictive visitation policies and improved access to reading materials and have achieved much of the other relief sought by stipulation (see p __, n 1, *supra*). There can be no question, then, that plaintiffs are "prevailing parties" under section 1988. As such, they are entitled to an award of fees unless defendants "establish the special circumstances which militate against awarding a fee to a successful litigant (*Mid-Hudson Legal Servs. v G & U, Inc.,* 578 F2d 34, 37-38)" (*Matter of Johnson v Blum, supra,* p 459). Here, because no such special circumstances have been shown, an award of fees is not a matter of discretion but mandatory (*Matter of Johnson v Blum, supra*). Nor is the fact that plaintiffs' counsel is a publicly funded legal service organization a reason for denial of such an award.

In view of our determination of plaintiffs' section 1988 request, we do not reach their request for fees as successful parties in a class action under CPLR 909.

### IV

Accordingly, the judgment should be modified and the provisions dismissing the cause of action pertaining to

recreation and exercise and denying attorneys' fees vacated. There should be a declaration that the recreation and exercise arrangements and facilities, under the circumstances shown in this record to exist for detainees in the Genesee County Jail, do not meet minimum standards under the due process clauses of the State and Federal Constitutions; and the matter should be remitted for the purpose of fashioning an appropriate directive for interim measures to provide recreation and exercise opportunities for detainees until the projected additions and renovations of the jail are completed. The court should meet immediately with the parties or their representatives in order to ascertain the present status of the projected improvements and, if possible, to arrive at mutually agreeable terms and conditions for such interim measures as will satisfy due process minimum standards; and the court should take whatever additional proof is necessary or appropriate. In determining what is fair to the detainees and at the same time feasible and practicable, given the limitations of the present structure, the court should, of course, consider the plans for recreation and exercise facilities included in the long-term improvements now under way and their anticipated date of completion as well as Sheriff Call's testimony pertaining to the purchase of equipment and use of space in the basement. The court should also consider those sections of 9 NYCRR part 7028 which do not appear, because of limitations in the present facility, to be either impossible of attainment or totally impracticable and, in particular, 9 NYCRR 7028.1 which provides that "each prisoner confined in a local correctional facility shall be entitled to a recreation period of at least one hour each day." While this standard, we have held, may not be taken as the measure of what is constitutionally acceptable, it, nevertheless, represents what the Commission has set as an appropriate minimum and for that reason deserves careful consideration.

■ ■ The judgment should direct that plaintiffs are entitled to attorneys' fees pursuant to section 1988 of title 42 of the United States Code and the court should make an appropriate award on remittal. There should also be a modification to include a declaration that the medical and

mental health care system meets minimum standards under the due process clauses of the United States and New York State Constitutions.

The judgment should be modified as set forth herein and otherwise affirmed.

CALLAHAN, DOERR, O'DONNELL and MOULE, JJ., concur.

Judgment unanimously modified and as modified affirmed, with costs to plaintiffs, and matter remitted to Supreme Court, Genesee County, for further proceedings, in accordance with opinion by Hancock, Jr., J. P.