Alexander, J.
(dissenting). Respondent, Commissioner of
the Department of Correctional Services, has denied petitioners, husband and wife, private family visits with one another at a correctional facility solely because the husband, an inmate, is suffering from Acquired Immune Deficiency Syndrome (AIDS). The basis for respondent’s determination — to shield petitioner wife from infection should the two decide to engage in sexual relations — invades an area of personal decision-making between a married couple embraced by their marital privacy right, and invidiously discriminates against petitioners in a way that burdens the exercise of that fundamental right. Moreover, respondent advances neither an institutional concern nor a penological purpose in support of his determination. In finding that respondent’s purpose need only be supported by some rational basis, the plurality disregards important constitutional principles, both State and Federal, and together with the concurrence, which also adopts the position that a higher level of scrutiny is required, reaches a result that, in our view, is unsupportable. We therefore respectfully dissent.
I.
A
It may no longer be disputed that personal decisions intimately involving marital and familial relations are constitutionally protected from governmental interference (see, e.g., Roe v Wade, 410 US 113 [abortion]; Eisenstadt v Baird, 405 US 438 [contraception]; Loving v Virginia, 388 US 1 [interracial marriage]; Griswold v Connecticut, 381 US 479 [contraception]; Prince v Massachusetts, 321 US 158 [family relationships]; Skinner v Oklahoma, 316 US 535 [procreation]; Pierce v Society of Sisters, 268 US 510 [child rearing]). Marriage and procreation particularly are rooted in our most basic liberties, and have been characterized as "the foundation of the family and of society, without which there would be neither civiliza *64 tion nor progress” (Maynard v Hill, 125 US 190, 211), and as "fundamental to the very existence and survival of the race” (Skinner v Oklahoma, 316 US 535, 541, supra). Thus, among those decisions that an individual may make free of unjustified government intrusion are "personal decisions 'relating to marriage’ ” (Carey v Population Servs. Intl., 431 US 678, 684-685, quoting Roe v Wade, 410 US 113, 152-153, supra; see also, Zablocki v Redhail, 434 US 374, 385). In short, the freedom of personal choice in matters of marriage is safeguarded by the individual’s constitutional right of privacy (Zablocki v Redhail, 434 US 374, 385, supra; Griswold v Connecticut, 381 US 479, 486, supra; Matter of L. Pamela P. v Frank S., 59 NY2d 1, 6; Crosby v State of New York, Workers’ Compensation Bd., 57 NY2d 305, 311-312; People v Onofre, 51 NY2d 476, 486; Cooper v Morin, 49 NY2d 69, 80).
Certainly, the decision of a married couple to risk the consequences of sexual intercourse (such as pregnancy, abortion, infection) falls within the scope of those personal intimate decisions relating to matters of marriage that are constitutionally protected (see, Griswold v Connecticut, 381 US 479, supra, and progeny). Without question, if petitioner husband was not an inmate, he and his wife could not be denied the right to be together as a married couple, and to engage in sexual relations — despite his affliction with AIDS — absent a compelling government purpose, and the most narrowly tailored means to achieve that purpose (see, Zablocki v Redhail, 434 US 374, 388, supra; Carey v Population Servs. Intl., 431 US 678, 686, supra; Matter of L. Pamela P. v Frank S., 59 NY2d 1, 6, supra). Similarly, a compelling State interest and the least onerous means to achieve it would be required were the State to discriminate between individuals outside of prison in a way that burdened the exercise of the marital privacy right (Shapiro v Thompson, 394 US 618 [denial of welfare benefits may not burden fundamental right to travel]). Petitioner husband is incarcerated however. We are therefore called upon to gauge the effect of incarceration on petitioners’ claim that respondent’s determination to deny him admission to the Family Reunion Program solely because he has AIDS unreasonably intrudes upon a personal decision between him and his wife relating to their marriage and unfairly distinguishes petitioner husband from other inmates admitted to the program.
Incarceration necessarily results in the withdrawal or limitation of many privileges and rights (Pell v Procunier, 417 US *65 817, 822; Cruz v Beto, 405 US 319, 321; Price v Johnston, 334 US 266, 285; Matter of Rivera v Smith, 63 NY2d 501, 510; Matter of Brown v McGinnis, 10 NY2d 531, 536). Marital and familial rights in general are also restricted, not only by the fact of incarceration, but also by the penological purposes of incarceration (Turner v Safley, 482 US —, 107 S Ct 2254; see generally, Note, Conjugal Visitation Rights and the Appropriate Standard of Judicial Review for Prison Regulations, 73 Mich L Rev 398, n 7). Such a deprivation of rights is undoubtedly justified by the considerations underlying our penal system (Pell v Procunier, 417 US 817, 822, supra; Matter of Rivera v Smith, 63 NY2d 501, 510, supra). It is settled, however, that certain constitutional rights — including the right to marry — survive incarceration (Turner v Safley, 482 US —, 107 S Ct 2254, supra; Matter of Rivera v Smith, 63 NY2d 501, 510, supra). Although, "with the closing of the prison doors behind him an inmate loses, or must endure substantial limitations on, many rights and privileges he previously enjoyed” (Matter of Rivera v Smith, 63 NY2d 501, 510, supra), the "[p]rison walls do not form a barrier separating [an inmate] from the protections of the Constitution” (Turner v Safley, 482 US, at —, 107 S Ct, at 2259, supra). Thus, an inmate does not forfeit all constitutional protection upon conviction and incarceration, but retains those rights that " 'are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system’ ” (Turner v Safley, 482 US, at —, 107 S Ct, at 2265, supra; O’Lone v Estate of Shabazz, 482 US —, 107 S Ct 2400; Bell v Wolfish, 441 US 520, 545; Pell v Procunier, 417 US 817, 822, supra; Matter of Rivera v Smith, 63 NY2d 501, 510, supra; Abdul Wali v Coughlin, 754 F2d 1015, 1028-1029).
Accordingly, it has been held that prisoners retain, for example, the right to due process (Wolff v McDonnell, 418 US 539, 546), the right to petition the government for the redress of grievances (Johnson v Avery, 393 US 483), the right not to be subject to cruel and unusual punishment (Estelle v Gamble, 429 US 97), and the right to equal protection of the laws (Lee v Washington, 390 US 333). Inmates also retain those rights guaranteed by the First Amendment, and may exercise them to the extent it would not be inconsistent with their status as prisoners and with the legitimate restrictions imposed by confinement (Pell v Procunier, 417 US 817, supra). So too, do they retain basic liberties guaranteed by our State Constitution unless outweighed by the competing concerns of security, *66 penology or prison administration (Matter of Rivera v Smith, 63 NY2d 501, supra; Cooper v Morin, 49 NY2d 69, supra; Matter of Brown v McGinnis, 10 NY2d 531, supra; Powlowski v Wullich, 102 AD2d 575). We have recognized in this respect the importance to those who are confined of maintaining marital and familial bonds, when we held that our State Due Process Clause affords to pretrial detainees the right to contact visits with family and loved ones (see, Cooper v Morin, 49 NY2d 69, 81, supra; cf., Block v Rutherford, 468 US 576, 586 [pretrial detainees have no Federal right to contact visits]). Moreover, the marriage relationship itself is constitutionally protected, even in the prison context, for "[m]any important attributes of marriage remain * * * after taking into account the limitations imposed by prison life” (Turner v Safley, 482 US, at —, 107 S Ct, at 2265, supra; see also, Cooper v Morin, 49 NY2d 69, supra).[1]
Respondent has established the Family Reunion Program at certain facilities to allow qualified inmates to visit privately with their spouses and various family members (7 NYCRR 220.3 [d]). The very existence of the program attests to respondent’s determination, in his sound judgment and expertise as a prison administrator, that private family visits between inmates and their spouses serve an important rehabilitative function. Indeed, the stated purpose of the program is "to preserve, enhance and strengthen family ties that have been disrupted as a result of incarceration” (7 NYCRR 220.1). Thus, respondent has extended to eligible inmates the opportunity to engage in conjugal visits — in other words the opportunity to exercise a fundamental aspect of the marital right — notwithstanding the fact of incarceration. In so doing, respondent has concluded that participation in the Family Reunion Program at those facilities where it has been established is consistent with institutional administration and security, and with legitimate penological goals.
That respondent has created the program does not vest in petitioners the right to conjugal visitation, for convicted prisoners have no right per se to conjugal visits. Indeed, petitioners neither assert that respondent is required to establish a *67 conjugal visitation program, nor do they argue that respondent must affirmatively provide all inmates access to the Family Reunion Program at facilities where it is instituted. Any analogy to those cases holding that a discretionary parole program does not vest in an inmate a “liberty interest” is therefore inapposite (see, e.g., Matter of Russo v State Bd. of Parole, 50 NY2d 69 [conditional parole program]; Greenholtz v Nebraska Penal Inmates, 442 US 1 [same]).
Merely because respondent is not required to establish a Family Reunion Program, however, does not mean that once a program is instituted, he may condition petitioner husband’s eligibility in any way he sees fit. For although admission to the program is not by itself a right, the decision to engage in or abstain from sexual relations once admitted to the program implicates an aspect of the fundamental marital right — an aspect of the marital right that respondent has given inmates the opportunity to exercise. Yet respondent denies to these petitioners the benefits of the program solely because of the manner in which they may choose to exercise their marital right. The basis for this determination, in effect, invades a part of the fundamental marital right — the area of personal intimate decision-making between husband and wife — that survives incarceration. The interest of a married couple in being permitted to make for themselves the intimate and personal decision, free of government intrusion — whether to engage in sexual relations — is fundamental and of recognized constitutional dimension (cf., French v Heyne, 547 F2d 994 [vocational training in prison]). Moreover, respondent discriminates against petitioner husband by treating him differently from like-situated inmates at the facility in a way that burdens the exercise of the marital privacy right (see, US Const 14th Amend; NY Const, art I, § 11; Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 75, supra; O’Brien v Skinner, 414 US 524).
B
In assessing an inmate’s constitutional challenge to a prison regulation or policy, we must look to whether there has been asserted a legitimate penological purpose for the restriction, for if there has been, the regulation must be upheld (Turner v Safley, 482 US —, 107 S Ct 2254, 2261, supra; O’Lone v Estate of Shabazz, 482 US —, 107 S Ct 2400, 2404, supra; Block v Rutherford, 468 US 576, 589, supra; Bell v Wolfish, 441 US *68 520, 546-547; Jones v North Carolina Prisoners’ Union, 433 US 119, 130-133; Pell v Procunier, 417 US 817, 823, supra; Matter of Rivera v Smith, 63 NY2d 501, 510, supra). Recently, the Supreme Court has again articulated the standard according to which courts are to review constitutional challenges to prison restrictions: "when a prison regulation impinges on inmates’ constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests” (Turner v Safley, 482 US, at —, 107 S Ct, at 2261, supra [emphasis added]; see also, O’Lone v Estate of Shabazz, 482 US, at —, 107 S Ct, at 2404, supra). While this standard does not compel a "strict scrutiny” of the regulation, neither is it satisfied upon the finding of a mere "rational basis” related to a general State interest. Our inquiry demands of the challenged prison regulation or practice that it further a legitimate institutional or penological purpose.
The Supreme Court has identified various factors particularly pertinent to a determination of the reasonableness of a prison restriction that impinges on constitutional rights: first, whether there is a valid logical connection between the prison regulation and the institution’s interest put forward to justify it; second, whether there are alternative means of exercising the right that remain open to prison inmates; third, whether accommodation of the asserted constitutional right will adversely impact on correction employees, on the prison population, and on the allocation of prison resources; fourth, whether there are ready alternatives available to prison authorities to adequately address the concerns advanced. In respect to this last factor, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response” to prison concerns (Turner v Safley, 482 US, at —, 107 S Ct, at 2260-2262, supra; see also, O’Lone v Estate of Shabazz, 482 US, at —, 107 S Ct, at 2405-2406, supra).
Although in somewhat different terms, we have articulated the analysis appropriate to a State constitutional challenge of a prison regulation or practice. What is required is a balancing of the competing interests at stake: where a constitutional infringement results from a prison restriction, the infringement must be weighed against "the institutional needs and objectives being promoted” by the restriction (see, Matter of Rivera v Smith, 63 NY2d 501, 511, supra; Matter of Mary of Oakknoll v Coughlin, 101 AD2d 931, 932). Thus, in the context of pretrial detainees, for example, we held that our State Due *69 Process Clause requires us to balance the harm to the individual resulting from a deprivation of contact visits with family against the legitimate purposes for pretrial detention (Cooper v Morin, 49 NY2d 69, 79, supra [distinguishing between the purposes for confinement of pretrial detainees and confinement of convicted prisoners]; Powlowski v Wullich, 102 AD2d 575, 585, supra). Despite the lack of identical terminology, what is central to both Federal and State approaches is a weighing or balancing of the nature and importance of the right asserted against the purposes advanced for the prison regulation or practice. And, critical to either analysis is that the interest advanced by the prison relate to the purposes or administration of correction facilities.
Also to be considered in reaching the appropriate balance of these factors is the difficulty of the judgments required of prison authorities in the administration of correctional institutions (see, Turner v Safley, 482 US —, 107 S Ct 2254, supra; Pell v Procunier, 417 US 817, 827, supra). Prison administrators — charged with the responsibility "to secure their institutions against escape, to prevent the transfer or possession of contraband, and to protect the safety of inmates and prison employees” — are faced with the formidable task of managing the "daily activities of a large number of inmates who have been confined due to their criminal, and often violent conduct” (Matter of Rivera v Smith, 63 NY2d 501, 512, supra; see, Procunier v Martinez, 416 US 396, 404; Cruz v Beto, 405 US 319, 321, supra). They are vested with broad discretion to accomplish their duties under the necessary order and discipline (Matter of Rivera v Smith, 63 NY2d 501, 512-513, supra). Courts, on the other hand, are ill equipped to resolve problems of prison administration (Procunier v Martinez, 416 US 396, 405, supra), and our " 'inquiries spring from constitutional requirements * * * rather than * * * idea[s] of how best to operate a [correction] facility’ ” (Powlowski v Wullich, 102 AD2d 575, 582-583, supra, quoting Bell v Wolfish, 441 US 520, 539, supra). Mindful of these principles, we turn to the particular prison restriction at issue.
II.
In October 1985, petitioner husband was approved for participation in the Family Reunion Program at the Auburn Correctional Facility. At that time, he satisfied all the requirements for eligibility (see, 7 NYCRR 220.1 et seq.). Indeed, *70 petitioners completed a successful Family Reunion Program visit in November 1985. In December 1985, petitioner husband was diagnosed as suffering from AIDS and placed in the Auburn Hospital unit. Since then, petitioner wife has been able to have contact visits with her husband, albeit under strained conditions; petitioner husband must sit in a chair in the doorway of the isolation room while his wife sits in the hospital’s main corridor — with a table placed between them and a correction officer in close proximity. During the months following the diagnosis, both petitioners sought counseling from responsible public organizations regarding so-called "safe sex” practices and other precautions to avoid infection. Petitioner wife was also advised of the importance to her husband’s health of providing emotional support and maintaining the family bond, and of her critical role in that regard. In February 1986, petitioner husband applied again for admittance to the program so that he and his wife could spend time alone together. Respondent denied petitioner husband’s application because he was diagnosed as having a communicable disease (see, 7 NYCRR 220.3 [c] [8]). Pending this appeal, petitioner husband’s application to visit privately with other family members as permitted by the Family Reunion Program was also denied for the same reason.
On petitioners’ challenge of that determination in this article 78 proceeding, respondent asserts as a justification for its policy the danger that petitioner husband may infect his wife with AIDS, and that the State has an interest in reducing the incidence of AIDS. It must be observed that we are not to hypothesize some penological interest on respondent’s behalf. This being an administrative determination, as opposed to a legislative enactment, we "may not supply a reasoned basis for the agency’s action that the agency itself has not given” (see, Motor Vehicle Mfrs. Assn. v State Farm Mut., 463 US 29, 43; Securities Commn. v Chenery Corp., 332 US 194, 196). Respondent does not articulate any concern for institutional security, does not identify any interest in the safety of petitioner husband or the prison employees,[2] and does not advance a single interest that would further a penological purpose or facilitate prison administration.
*71 Instead, respondent claims to be justified in his action by the broadest of government objectives: the possible reduction of the transmission of communicable disease throughout the population at large. This is not an instance where a nonprisoner has been diagnosed as having AIDS, which might justify precluding a conjugal visit with an AIDS-free inmate spouse to reduce the spread of the virus throughout the prison population. Respondent’s determination has no impact on the prison community. The asserted interest is not a penological one. Respondent has not shown how its policy bears any relationship to the traditional purposes for incarceration, or how it addresses concerns for institutional security and administration (see, e.g., Johnson v Rockefeller, 365 F Supp 377, affd sub nom. Butler v Wilson, 415 US 953 [prohibition on marriage for inmates sentenced to life imprisonment was part of punishment for crime]; Matter of Mary of Oakknoll v Coughlin, 101 AD2d 931, 932, supra [marriage license requirement reasonably related to prison administration of Family Reunion Program]). Neither has respondent demonstrated a valid logical connection between its determination and the asserted goal. Any connection between respondent’s policy and the asserted interest — obviously an important State interest, as the plurality points out (see, plurality opn, at 57) — is tenuous. Respondent’s determination, at bottom, is based on a series of speculations and unwarranted presumptions: that petitioners necessarily will use their private time together to engage in sexual relations, that they necessarily will disregard the advice of their professional health care counselors and not employ "safe sex” techniques, that petitioner wife necessarily will contract AIDS from her husband, and that petitioner wife necessarily will engage in adulterous sexual activities with others — without the use of prophylactics — and thereby transmit the virus to the population at large. On this record, which demonstrates that petitioners have sought the information and advice of professionals and are prepared to act in conformity therewith, the purported connection is so remote as to render the determination to deny these petitioners entirely the benefits of the Family Reunion Program irrational and unjustifiable.
Even if the connection between respondent’s determination and its goal were less tenuous, the deprivation of all access to the program represents an "exaggerated response” to petitioner husband’s illness (see, Turner v Safley, 482 US, at —, 107 S Ct, at 2262-2264, supra). There are obvious, easy alterna *72 lives to respondent’s policy that accommodate the substantial interests of petitioners while imposing de minimis burdens on respondent’s resources. Significantly, respondent’s own regulations do not provide that all inmates with a communicable disease are not qualified for the Family Reunion Program; rather they provide that an applicant with a diagnosed communicable disease must receive a special review (7 NYCRR 220.3 [c] [8]) and that if there is evidence of a recent communicable disease that presents a serious risk of contagion, prospective visitors should be so advised (see, 7 NYCRR 220.4 [a] [2] [iii]). That respondent has precluded petitioner husband from visiting privately with other family members — to whom petitioner husband could not transmit AIDS according to the medical evidence in the record — further undermines any purported rationality and highlights the exaggerated nature of respondent’s response.
Not only is respondent’s determination not predicated on legitimate correction goals, his stated justification is aimed solely at nonprisoners. In Procunier v Martinez (416 US 396, supra), the Supreme Court recognized that prison regulations may impermissibly impinge upon the rights of nonprisoners. There, the court invalidated a State prison regulation requiring the censorship of inmate mail, finding that mail censorship implicated more than the First Amendment rights of prisoners and therefore required more than a mere rational basis. The court observed that "[b]oth parties to the correspondence have an interest in securing that result, and censorship of the communication between them necessarily impinges an the interests of each [as mail correspondence is] a particular means of communication in which the interests of both parties are inextricably meshed” (Procunier v Martinez, 416 US 396, 408-409, supra [emphasis added]). Similarly, in Turner v Safley (482 US —, 107 S Ct 2254, supra), the Supreme Court invalidated a State prison regulation that prohibited marriages between inmates and between inmates and civilians, noting that this "regulation may entail a 'consequential restriction on the [constitutional] rights of those who are not prisoners’ ” (Turner v Safley, 482 US, at —, 107 S Ct, at 2266, supra, quoting Procunier v Martinez, 416 US 396, 409, supra).[3] Here, *73 respondent’s determination to preclude petitioner husband from the Family Reunion Program because he might infect his wife incidentally impinges on and consequently restricts her personal decision to engage in sexual intercourse and risk infection — a decision protected by her marital privacy right. While we need not reach the issue of whether this incidental effect on petitioner wife’s marital privacy right warrants application of the Martinez standard, recognition of it serves to underscore the requirement of some institutional or penological purpose for the restriction on petitioner husband’s right.
Neither does any provision in the Correction Law suggest that respondent’s action in excluding petitioners from the Family Reunion Program furthers a penological purpose. Correction Law § 70 (2) entrusts to respondent the responsibility to care for inmates and to assist them "to live as law abiding citizens”. In furtherance of this objective, respondent may establish programs "not inconsistent with other provisions of law” and "with due regard to * * * the safety and security of the community” (Correction Law § 70 [2] [a]). The purpose of the statute is to enable respondent to structure programs that reintegrate the inmate with society and reduce recidivism (see, Correction Law § 70, L 1970, ch 476, Governor’s Memorandum, and Memorandum of State Executive Department, 1970 McKinney’s Session Laws of NY, at 3101, 2944). The "safety and security of the community”, therefore, does not encompass matters of community health, but relates to the protection of the community from dangerous criminals who respondent may consider releasing into the community as members of a rehabilitation program. In this respect, it bears noting that the Legislature has not delegated to the Department of Correctional Services the authority to regulate in matters relating to public health (see, Public Health Law § 225 [4] [authority delegated to the Public Health Council]). While safeguarding the health of the community is undeniably a matter of public interest in the general sense, it is not a penological purpose that will justify the defeat of petitioners’ claim. Prison administrators, it is true, are called upon to undertake "Herculean tasks” requiring expertise, planning and resources (Procunier v Martinez, 416 US 396, 405, supra). Nevertheless, the very reason for judicial deference to their *74 judgment is because it is exercised in the area of their particular expertise. The rationale for deferring to prison administrators loses force when they attempt to regulate in an area such as this which does not involve penological expertise.
Under the balancing approach adopted in this State, the conclusion that respondent’s determination unreasonably impinges upon petitioners’ substantial marital privacy right and invidiously excludes petitioner husband from the Family Reunion Program is equally inescapable (see, Matter of Rivera v Smith, 63 NY2d 501, supra; Cooper v Morin, 49 NY2d 69, supra). On the one hand, petitioners have asserted a significant interest in not being excluded from the program unfairly. On the other hand, where we ordinarily weigh the concerns advanced by the prison authorities for internal security, penology or prison administration, no such interest has been proffered. Our conclusion, therefore, that respondent’s determination is an exaggerated response to petitioner husband’s illness with no reasonable relationship to a legitimate penal purpose rests equally on an "adequate and independent” State ground (Michigan v Long, 463 US 1032, 1041-1042). In this regard, this court has frequently enforced the protection of individual rights under our State Constitution even where the Federal Constitution either did not or might not afford such protection (see, e.g., Matter of Patchogue-Medford Congress of Teachers v Board of Educ., 70 NY2d 57; People v Stith, 69 NY2d 313, 316, n; People ex rel. Arcara v Cloud Books, 68 NY2d 553; People v P. J. Video, 68 NY2d 296; People v Class, 67 NY2d 431, 433; People v Adams, 53 NY2d 241, 250). Nor has this court hesitated to accord to individuals protection under our State Constitution from governmental intrusion into intimate and private aspects of their lives (see, Matter of Patchogue-Medford Congress of Teachers v Board of Educ., 70 NY2d 57, 66, 68, supra; Rivers v Katz, 67 NY2d 485), including the fundamental right to marriage and family life (see, Cooper v Morin, 49 NY2d 69, supra; People ex rel. Portnoy v Strasser, 303 NY 539, 542).
In sum, respondent has not proffered an institutional or penological purpose for classifying petitioner husband differently from other qualified applicants and invidiously excluding him from the Family Reunion Program because he suffers from AIDS. Indeed, respondent has not proffered any purpose in precluding these petitioners from being together as a married couple that outweighs the significant interest — vital to this married couple — of having time alone together under *75 the program. We conclude therefore that respondent’s asserted objective does not justify the intrusion on their marital prerogative to engage in or abstain from sexual relations, nor does it warrant treating petitioner husband differently from other eligible inmates in such a way as to effect a total deprivation of the benefits of the Family Reunion Program (see, e.g., City of Cleburne v Cleburne Living Center, 473 US 432, 450; O’Brien v Skinner, 414 US 524, supra; Skinner v Oklahoma, 316 US 535, 541, supra; McMinn v Town of Oyster Bay, 66 NY2d 544, 549; People v Liberta, 64 NY2d 152). Petitioner husband, having met all the requirements for eligibility and having been approved, should not now be denied readmission to the program on the sole basis that he has contracted AIDS and may infect his wife through sexual relations. That determination, intruding as it does upon the marital privacy right of both petitioners, and discriminating as it does against petitioner husband without a purpose reasonably related to a legitimate penological purpose, should not be upheld.
III.
In view of the foregoing, we do not reach any issue in respect to section 504 of the Federal Rehabilitation Act of 1973 (29 USC § 794), and would reverse the order of the Appellate Division.
Judges Titone and Bellacosa concur with Judge Simons; Judge Bellacosa concurs in a concurring memorandum; Chief Judge Wachtler concurs in result in a separate opinion; Judge Alexander dissents and votes to reverse in another opinion in which Judges Kaye and Hancock, Jr., concur. Order affirmed, without costs.

. The Supreme Court has articulated only some of the incidents of marriage that are unaffected by the fact of confinement or the pursuit of legitimate penological goals: the expression of emotional support and public commitment; the exercise of religious faith and personal dedication; and the status of marriage in relation to the receipt of certain government benefits and property rights (see, Turner v Safley, 482 US, at —, 107 S Ct 2254, 2265).

. Respondent advanced a concern at the Appellate Division, since abandoned, that petitioner husband’s participation in the program would raise the risk of transmission to those prison employees responsible for cleaning the trailer facilities.

. The Turner court, however, expressly declined to reach the issue of whether the regulation should be evaluated on the basis that it incidentally restricts the rights of nonprisoners inasmuch as it concluded that the marriage regulation did not withstand scrutiny under the "reasonable relationship to a penological purpose” test and thus violated the rights of the prisoners.