OPINION OF THE COURT
Chief Judge Wachtler.
On this appeal we are asked to consider the constitutionality of a School District policy requiring all probationary teachers to submit to urinalysis to detect potential drug abuse. The courts below found that the practice constituted an illegal search and seizure in violation of the teachers’ constitutional rights. The School District appeals.
In 1982 the Patchogue-Medford School District signed a *63 collective bargaining agreement with the Patchogue-Medford Congress of Teachers, the union representing the teachers. The agreement requires probationary teachers to submit to a full physical examination in their first year of employment and again during the final year of their probationary term when they become eligible for tenure. In 1985 there were approximately 22 teachers completing their probationary terms in the Patchogue-Medford School District. Some time prior to May of 1985 each of these teachers had completed a full physical examination conducted by a physician designated by the School District.
On May 3, 1985 the School District notified all of these probationary teachers by letter that they must submit to an additional urinalysis examination. The letter states that, "the district is requiring a urine sample for all einployees eligible for tenure.” The sample would be collected by the school nurse and then forwarded to a laboratory for testing. It is conceded that the sole purpose of this examination was to determine whether any of the teachers were using drugs illegally. There was no resolution by the Board of Education requiring these tests and there is no policy statement or directive from either the Board or the Superintendent relating to them. However, the teachers were informed that the Superintendent would not recommend for tenure any teacher who refused to provide the urine sample.
Prior to the date for the scheduled examination, the teachers’ union commenced this proceeding to prohibit the examination claiming that it was unauthorized and constituted an unreasonable search and seizure in violation of the teachers’ constitutional rights. The union sought declaratory and injunctive relief and obtained an interim stay. The School District raised several procedural objections and, on the merits, contended that the examination was authorized by the collective bargaining agreement, did not constitute a search or seizure and, in any event, was a reasonable requirement to impose on a tenure candidate.
The trial court granted the petition. The court found that the urine test was not part of the medical examination authorized by statute (Education Law § 913) and the collective bargaining agreement signed by the teachers’ representative. The court further held that it constituted a search and seizure and could not constitutionally be made in the absence of reasonable suspicion. The court noted that the "District makes *64 no attempt to justify the demand for a sample upon any ground supporting the need for such testing either as to the prospective tenured teachers as a class or to any of them individually.”
The Appellate Division affirmed. The court agreed that the scheduled test was not part of the required and completed medical examination and constituted a purely investigatory search and seizure seeking evidence of illegal drug use. The court also held that probable cause was not required but that the test could not be ordered without reasonable suspicion. The court stated: "Balancing a Board of Education’s interest in ensuring that its employees are fit to perform their jobs against the teachers’ reasonable expectation of privacy, we hold that the reasonable suspicion standard is the appropriate basis for constitutionally compelling a public school teacher to submit to a urine test for the purposes of detecting the use of controlled substances” (119 AD2d 35, 40).
The School District, joined by the United States Attorney General as amicus curiae, urges on a number of grounds that the compulsory urine test does not violate the teachers’ constitutional rights. First, it is urged that compulsory urine testing does not involve a search and seizure because it may be accomplished without invading the individual’s body and all that is seized is a waste product in which the individual can have no reasonable expectation of privacy. Second, it is argued that if a search and seizure is involved, it is nevertheless reasonable to require teachers to submit to compulsory urine testing at the will of the employer because public school teachers have a diminished expectation of privacy with respect to their fitness and the State has an overriding interest in providing a drug free environment in the public schools. Finally, the School District contends that, in any event, the collective bargaining agreement signed by the teachers’ representative constitutes consent or waiver of the teachers’ rights with respect to a compulsory urine test.
It is not clear whether the urine test compelled here would satisfy Federal constitutional requirements. The Supreme Court has not yet decided a case involving compulsory drug testing of government employees, and the courts which have considered application of the Fourth Amendment have reached diverse conclusions. All appear to have held that such testing involves a search and seizure, but differ as to whether it is reasonable for the government to act only on reasonable *65 suspicion with respect to a particular employee (see, e.g., Division 241 Amalgamated Tr. Union v Suscy, 538 F2d 1264; Jones v McKenzie, 628 F Supp 1500; Capua v City of Plain-field, 643 F Supp 1507; Security & Law Enforcement Employees v Carey, 737 F2d 187, 205; Turner v Fraternal Order of Police, 500 A2d 1005 [DC App]; cf., Allen v City of Marietta, 601 F Supp 482 [reasonable suspicion noted]) or whether some form of random testing of all employees in certain categories is permissible (see, e.g, McDonnell v Hunter, 809 F2d 1302; Shoemaker v Handel, 795 F2d 1136; Rushton v Nebraska Pub. Power Dist., 653 F Supp 1510 [D Neb 1987]; National Treasury Employees Union v Von Raab, 816 F2d 170 [5th Cir]). A majority of courts appear to support the conclusions reached by the courts below in the case now before us, that urine testing compelled by the government does involve a search and seizure, and that reasonable suspicion is required (see, Miller, Mandatory Urinalysis Testing and the Privacy Rights of Subject Employees: Toward a General Rule of Legality Under the Fourth Amendment, 48 U Pitt L Rev 201 [1986]; see also, Fraternal Order of Police v City of Newark, 216 NJ Super 461, 524 A2d 430; City of Palm Bay v Bauman, 475 So 2d 1322 [Fla 1985], reaching a similar conclusion under State Constitutions).
As noted, the School District disputes both of those conclusions and contends that it has a right to conduct such tests at will. The question is an important one which should be settled throughout the State and one on which resort to the Federal Constitution would not be dispositive since the practice, even if permitted by the Fourth Amendment, may not satisfy the requirements of the comparable provision of the State Constitution (NY Const, art I, § 12). The heart of the controversy under both Constitutions is whether the particular test infringes on an expectation of privacy which society considers reasonable. To the extent that this case deals with the expectation of privacy of public employees in this State, it presents a type of inquiry appropriate for resolution under the State Constitution. We therefore consider it necessary and appropriate to decide this case under both the State and Federal Constitutions.
In response to the concurring opinion it should be noted that the petition in this case refers generally to the teachers’ constitutional rights without specifically relying on either the Federal or State Constitutions. If this is sufficient in the context of this case to raise the Fourth Amendment, as we all *66 agree it is, it should serve to present State constitutional questions as well. In search and seizure cases especially, this court has traditionally rested its decisions on both State and Federal grounds when it appears that they both support the result reached (see, e.g., People v Perel, 34 NY2d 462; People v Cantor, 36 NY2d 106; People v Nieves, 36 NY2d 396; People v Gonzalez, 39 NY2d 122; People v Allende, 39 NY2d 474; People v Farenga, 42 NY2d 1092; Hynes v Moskowitz, 44 NY2d 383; People v Boodle, 47 NY2d 398; People ex rel. Piccarillo v State Bd. of Parole, 48 NY2d 76; People v Calhoun, 49 NY2d 398; Matter of Abe A., 56 NY2d 288). As we noted in the Gonzalez case (supra, at 131): "A bad seizure under the Federal Constitution in the Federal courts is also a bad seizure under both the Federal and State Constitutions in the courts of this State.” More recently we have noted that resort to the State Constitution, in addition to the Federal, is particularly apt when the result under Federal law is uncertain (People v Johnson, 66 NY2d 398, 406-407).
With respect to the suggestion that our reliance on both Constitutions is somehow unfair to the litigants it should be noted that one of the briefs submitted on this appeal was completely devoted to this issue. In addition, the relief sought here is in the nature of a declaratory judgment, where the object is not to determine whether the rights of a particular litigant have been violated, but is instead intended to provide guidance to the parties so that they may conform their future conduct to the law. As indicated above, reliance on the Federal Constitution alone could not provide a complete or adequate response to that inquiry. For the reasons that follow, we conclude that the test ordered in this case does not satisfy the requirements of either the State or Federal Constitutions.
The guarantee against unreasonable searches and seizures found in both the State and Federal Constitutions (US Const 4th Amend; NY Const, art I, § 12) is designed to protect the personal privacy and dignity of the individual against unwarranted intrusions by the State (People v Hodge, 44 NY2d 553, 557; Schmerber v California, 384 US 757, 767). It protects not only the individual’s home and property but also one’s person and bodily integrity (Matter of Abe A., 56 NY2d 288, supra; Schmerber v California, supra). It is primarily aimed at limiting the scope of criminal investigations by the police, but it also places restrictions on the conduct of government officials generally, including State employers and school authorities *67 (People v Scott D., 34 NY2d 483; New Jersey v T. L. O., 469 US 325; O’Connor v Ortega, 480 US —, 94 L Ed 2d 714).
This court and the Supreme Court have recognized that a blood test ordered to further a criminal investigation constitutes a search and seizure, and therefore must satisfy a reasonableness standard (Matter of Abe A., supra; Schmerber v California, supra). A urine test compelled by a government employer to determine illegal drug use involves some different considerations but still infringes on the individual’s privacy. It is unrealistic to argue, as the School District and the United States Attorney General do, that a person has no reasonable expectation of privacy with respect to urine because it is a waste product periodically eliminated from the body. Although it is a waste product, it is not generally eliminated in public or in such a way that the public or government officials can gain access to it in order to "read” its contents. That is why the School District is requiring the teachers to preserve it and deliver it for inspection. It is settled that a person can have no reasonable expectation of privacy in things which are intentionally abandoned or discarded (People v Baldwin, 25 NY2d 66; Abel v United States, 362 US 217). But it does not follow from this rule that a person has no privacy interests in a waste product before it is abandoned and therefore no right to dispose of it in a way which maintains privacy. If that were true, documents which individuals and businesses periodically destroy would be entitled to no constitutional protection from government scrutiny.
We also reject the School District’s contention that no search is involved when a person is required to provide a urine sample because urine, unlike blood, may be obtained without invading the person’s body. That is not the only privacy interest the Constitution protects. The act of discharging urine is a private, indeed intimate, one and the product may contain revealing information concerning an individual’s personal life and habits for those capable of analyzing it. There is no question that requiring a person to disrobe and expose his body or body cavities, or to empty the contents of his pockets, involves a sufficient intrusion on privacy to constitute a search (People v Perel, 34 NY2d 462, supra; Bell v Wolfish, 441 US 520, 558). Requiring a person to urinate in the presence of a government official or agent, as is sometimes required in these cases (see, e.g., Capua v City of Plainfield, 643 F Supp 1507, supra; Matter of Caruso v Ward, 133 Misc 2d 544; Storms v Coughlin, 600 F Supp 1214), is at least as *68 intrusive as a strip search. Even when the individual is permitted to perform the act in private, at the command and supervision of a person designated by the State, privacy interests are implicated. Ordering a person to empty his or her bladder and produce the urine in a container for inspection and analysis by public officials is no less offensive to personal dignity than requiring an individual to empty his pockets and produce a report containing the results of a urinalysis examination. In short, we conclude that the government’s act of requiring a person to submit to urinalysis for drug abuse constitutes a search and seizure. The remaining question is what standard of reasonableness the State must meet before it can require an employee to submit to such a test.
Reasonableness generally requires that the State have probable cause and obtain a warrant before conducting a search and seizure (see, e.g., People v Gokey, 60 NY2d 309; United States v Chadwick, 433 US 1). Under certain special circumstances, however, it may be reasonable to permit the government to search without a warrant on grounds not amounting to probable cause. In such instances the court must assess the reasons for the search and the extent to which it intrudes on legitimate privacy interests to determine whether, on balance, the government’s action is reasonable (People v Scott, 63 NY2d 518, 525; People v John BB, 56 NY2d 482, 487).
We have applied this analysis to searches of students by school officials seeking to eliminate illegal drugs from the public schools. We noted that given "the special responsibility of school teachers in the control of the school precincts and the grave threat, even lethal threat, of drug abuse among school children, the basis for finding sufficient cause for a school search will be less than that required outside the school precincts” (People v Scott D., 34 NY2d 483, 488, supra). However, we held that the fact that such searches were not aimed at uncovering evidence of crime, but were only intended to preserve the school environment, did "not permit random causeless searches”. (People v Scott D., supra, at 487; see also, New Jersey v T. L. O., supra, at 342, n 8 [permitting warrant-less search of student on "individualized suspicion”, but leaving open question as to whether this is an "essential element” of the reasonableness standard applicable to school authorities]).
Similar considerations are relevant when school authori *69 ties seek to have teachers submit to urinalysis for potential drug abuse. The School District has an interest in seeing that its teachers are fit and that drug abuse does not impair their ability to deal with the students. Teachers in this State are generally required to submit to an examination to determine their physical and mental fitness to perform their duties (Education Law § 913). They therefore have a diminished expectation of privacy with respect to State inquiries into their physical fitness to perform as teachers, and it is not unreasonable to require teachers to submit to further testing when school authorities have reason to suspect that they are currently unfit for teaching duties. Thus we agree with the courts below that reasonable suspicion is an appropriate standard, and that probable cause and a warrant are not required before school officials can demand that a teacher submit to a urinalysis for potential drug abuse (cf., O’Connor v Ortega, supra [plurality opinion holding government employer justified in searching employee’s office when reasonable grounds for suspecting that it will yield evidence of work-related misconduct, but leaving open question as to whether individualized suspicion is an essential element of the unreasonableness standard]).
The School District concededly did not have reasonable suspicion to believe that all or any of its probationary teachers was engaged in drug abuse. It claims, however, that reasonable suspicion is not required when a public employer chooses to test all employees in a particular category for potential drug abuse. It urges that such uniform testing is analogous to police check points and an effective and expected screening process for persons engaged in highly regulated activities.
Both this court and the Supreme Court have held that the police may uniformly stop individuals at fixed checkpoints in order to identify drunk drivers (People v Scott, supra; Delaware v Prouse, 440 US 648, 663). We emphasized, however, that under the applicable regulations, the police could only stop and inquire but could not give sobriety tests unless the driver’s appearance and demeanor, as measured by certain specified standards, gave cause to believe that he was intoxicated. We did not suggest that the police could also uniformly require the public, even the highly regulated driving public, to step to the side of the road and provide urine samples. Thus, here we are dealing with a greater intrusion on individual privacy and dignity.
*70 Although the District notes, as we have in the past, the prevalence of drugs in the schools among students, and more recent statistics showing a similar problem in the general work force, there is nothing in the record to indicate that this is also a problem among teachers generally or in this particular School District. If it is a problem, it has not been addressed by the Legislature, the Regents, the Commissioner of Education or, apparently, this School Board itself, which, as noted, issued no policy statement or regulation relating to the tests. It appears that the Superintendent alone identified the problem and chose a controversial solution.
The State has a legitimate interest in seeing that its employees are physically fit and that their performance is not impaired by illegal drug usage. The State also has a manifest interest in preventing crime and seeing that those who violate the law are brought to justice. There is little question that these goals would be more attainable if the State were able to search everyone periodically in an all-inclusive dragnet. If random searches of those apparently above suspicion were not effective, there would be little need to place constitutional limits upon the government’s power to do so. By restricting the government to reasonable searches, the State and Federal Constitutions recognize that there comes a point at which searches intended to serve the public interest, however effective, may themselves undermine the public’s interest in maintaining the privacy, dignity and security of its members. Thus random searches conducted by the State without reasonable suspicion are closely scrutinized, and generally only permitted when the privacy interests implicated are minimal, the government’s interest is substantial, and safeguards are provided to insure that the individual’s reasonable expectation of privacy is not subjected to unregulated discretion (People v Scott, supra). In this case those requirements have not been satisfied.
Finally, we note that requiring public employees or job applicants to submit to a physical examination to demonstrate fitness is accepted and traditional. In this case the collective bargaining agreement required the teachers to take such an examination and they did so without objection. Although the School District urges that this agreement constitutes a waiver of constitutional rights with respect to the random urine test at issue here, the courts below found as a fact that this was a new test not contemplated by the contract. We therefore have no need to consider the waiver issue.
*71 Accordingly, the order of the Appellate Division should be affirmed.