■ In the Matter of SHARON WILDER, Petitioner, v RICHARD KOEHLER, as Correction Commissioner of the City of New York, et al., Respondents.—Petition, pursuant to CPLR article 78, transferred to this court by order of the Supreme Court, New York County (Harold Tompkins, J.), entered on or about November 1, 1988, seeking to annul a determination of respondent Commissioner of the Department of Correction dated April 18, 1988 finding petitioner guilty of violating certain departmental regulations and dismissing her from her position of employment, granted to the extent of annulling respondent's finding that petitioner refused a lawful order to submit to a urinalysis, and otherwise confirmed, without costs.

The record reveals that, as a result of numerous absences from work, petitioner was ordered to undergo physical examination at respondent Department of Correction's Health Management Division (HMD). On March 20, 1987, petitioner was seen by Dr. Dharawat, who released her from duty and referred her to Dr. Sharon Packer, the Department's psychiatrist. She examined petitioner on March 23 and March 25 and reviewed the records of petitioner's personal psychiatrist, Dr. Gomez, who had diagnosed her condition as "depressive neurosis". While Dr. Packer thought petitioner's symptoms might

indicate hyperthyroidism, she nevertheless extended petitioner's leave through April 7, 1987.

When petitioner failed to report for work on April 8, her superior called her and ordered her to report to HMD. There, she was examined by Arthur Tomases, M.D., the Department's senior medical specialist. Dr. Tomases found no medical reason justifying the need for leave but he, too, allegedly on the recommendation of Dr. Gomez contained in the file, extended petitioner's leave through April 12, 1987. Dr. Tomases also ordered petitioner to submit to a urinalysis. Petitioner was accompanied to the bathroom by Captain Gloria McNeill who watched as she attempted to give a urine sample, without success. Following lunch, a second attempt, under the same conditions, was similarly unsuccessful. Petitioner was ordered to return to HMD the following morning but failed to report because her daughter was ill and petitioner was allegedly required to spend the day waiting with her at the hospital. Petitioner's employment was thereafter terminated for being absent on April 8, 1987 and for refusing a lawful order to submit to a urinalysis.

The Administrative Law Judge found petitioner guilty of being absent without leave, but not guilty of refusing a lawful order to submit to a drug test, and recommended a 20-day suspension. Respondent Correction Commissioner rejected the recommendation, finding petitioner guilty on both charges and imposing a penalty of termination for each offense. In reaching her determination, the Administrative Law Judge found that the Department had no reasonable suspicion to afford a basis upon which to order petitioner to submit to a urinalysis. The Commissioner, however, reasoned that despite the absence of any medical indication of drug involvement, the absence of any medical explanation for petitioner's absenteeism warranted the Department in requiring a test to rule out the involvement of drugs as a contributing factor.

We agree with the Administrative Law Judge that this position is devoid of merit. The individual's right to be free from State intrusion upon his personal privacy and dignity is protected by the guarantee against unreasonable search and seizure found in both the United States and the New York State Constitutions (Bell v Wolfish, 441 US 520; People v Hodge, 44 NY2d 553, 557). While, due to the nature of their work, law enforcement personnel have a diminished expectation of privacy, they cannot be required to submit to drug testing in the absence of reasonable suspicion (Matter of

*Patchogue-Medford Congress of Teachers v Board of Educ.,* 70 NY2d 57).

The record before us does not contain substantial evidence to support reasonable suspicion that petitioner used illicit drugs, and respondents' determination that she refused a lawful order is therefore without a rational basis *(300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 180; *Matter of Pell v Board of Educ.,* 34 NY2d 222). We note that both Dr. Dharawat and Dr. Packer, despite any reservations either might have entertained regarding the nature of her medical condition, extended her leave. Even Dr. Tomases' examination revealed no clinical sign of substance abuse. Moreover, at the time of his examination, there were two different diagnoses which had been suggested to explain petitioner's condition, depressive neurosis and hyperthyroidism. Respondents' contention that drug testing was ordered in the absence of any medical explanation for petitioner's disorder is simply not credible.

Even if respondents' contention was supported by substantial evidence in the record, mere absenteeism is insufficient to require a law enforcement officer to submit to testing in the absence of some affirmative indication that the officer is abusing drugs. In *Matter of King v McMickens* (69 NY2d 840), information was received from a reliable informant that the petitioner abused drugs. In *Matter of Shepard v Ward* (155 AD2d 293, 294), the signs were "glassy, bloodshot and watery eyes, slurred speech and a history of suspicious mood swings coupled with anonymous tips that named petitioner as one of several officers using drugs".

In view of evidence that testing based upon reasonable suspicion is inadequate to detect drug abuse among correction officers, given their close interaction with prisoners and high level of substance abuse, this court has upheld random testing by the Department *(Matter of Seelig v Koehler,* 151 AD2d 53). However, it is clear that petitioner herein was not tested pursuant to such a random testing program. Nor did respondents comply with the Commissioner's directive for the administration of such testing which, *inter alia,* provides that specimens be given without observation. Concur—Kupferman, J. P., Carro, Ellerin and Rubin, JJ.

Milonas, J., dissents in part in a memorandum as follows: In my opinion, the determination being appealed herein should be confirmed in its entirety and the petition denied. The review of an administrative decision is strictly circumscribed by the legal requirement that an agency's fact finding must be

upheld if it is supported by substantial evidence *(300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176). Applying that standard to the instant situation, the administrative determination in this matter was clearly predicated upon substantial evidence. There is no basis here for amending even in part respondent's ruling.