Simons, J.
(concurring). This case is before us on remand from the Supreme Court of the United States for reconsideration in view of its intervening decision in Milkovich v Lorain Journal Co. (497 US —, 111 L Ed 2d 1). After reconsideration, the majority has affirmed an order granting summary judgment to defendant. I agree with it that judgment was properly awarded on Federal grounds. In reconsidering the case, however, the majority has rendered an interpretation of Milkovich which is narrower than necessary to resolve the matter before us and one which appears, from statements in the Milkovich opinions, to be far more constricted than the Supreme Court intended. My purpose in writing is not to resolve these differences over the scope of the protection afforded by Milkovich. Only the Supreme Court can do that. My concern is that the Supreme Court will not have the opportunity to do so in this case because the majority has foreclosed review by also resting its decision on independent State grounds (see, Michigan v Long, 463 US 1032). I do not agree with the procedure followed, particularly in the circumstances of this case, and I find the majority’s reasoning supporting the two theories inconsistent. Accordingly, I cannot join in the opinion of the Court.
I
In pre-Milkovich decisions, the Federal and State courts had generally concluded that statements of opinion were protected from libel actions by the First Amendment. These holdings were based in large part on the statement of Justice Powell that "[u]nder the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we *258 depend for its correction not on the conscience of judges and juries but on the competition of other ideas.” (Gertz v Robert Welch, Inc., 418 US 323, 339-340.) Despite the sweep of that language, State and lower Federal courts recognized that Gertz had not created a blanket exemption for defamatory words merely because they were labeled as "opinion” (see, Steinhilber v Alphonse, 68 NY2d 283, 289-292; Cianci v New Times Publ. Co., 639 F2d 54, 61, quoted in Milkovich v Lorain Journal Co., 497 US, at —, 111 L Ed 2d, at 17). False factual accusations could easily be couched in the language of opinion. Thus, the courts quickly devised methods of distinguishing actionable statements of fact from nonactionable statements of opinion. The test was divided into various methods of determining whether the statements conveyed a precise meaning which could be characterized as true or false and, if the words were ambiguous, by resolving the ambiguity after an examination on the context in which the statements appeared (see, Ollman v Evans, 750 F2d 970, 976, cert denied 471 US 1127; Steinhilber v Alphonse, 68 NY2d 283, 292, supra).
The Supreme Court addressed the issue directly for the first time in Milkovich, holding that there is no separate constitutional privilege for statements that might be labeled "opinion”. The Court recognized that statements on matters of public concern must be provable as false before they are actionable and that requires a determination of whether they are matters of opinion or fact. Matters of public concern which do not contain a "provably false factual connotation” receive full constitutional protection (id., 497 US, at —, 111 L Ed 2d, at 18). Next, the Court recognized protection for statements that cannot "reasonably [be] interpreted as stating actual facts” about an individual (Hustler Mag. v Falwell, 485 US 46, 50). Avoiding literal definitions, the Court stated that prior case law required an examination of the "circumstances” in which the statement was made (Milkovich v Lorain Journal Co., supra, at —, at 16; see, Hustler Mag. v Falwell, supra; Greenbelt Publ. Assn. v Bresler, 398 US 6, 13; Letter Carriers v Austin, 418 US 264, 284-286). This "assur[esj that public debate will not suffer for lack of 'imaginative expression’ or the 'rhetorical hyperbole’ which has traditionally added much to the discourse of our Nation” (Milkovich v Lorain Journal Co., 497 US, at —, 111 L Ed 2d, at 19).
It can be argued that the Milkovich decision did not change *259 the law of defamation as it was previously applied by State and lower Federal courts. Justice Brennan did not believe it had and it is notable that the majority did not take exception to his observation that the Court had merely restated the law "lower courts have been relying on for the past decade” (see, Milkovich v Lorain Journal Co., supra, at —, at 21 [Brennan, J., dissenting]). His view is shared by others (see, e.g., The Supreme Court, 1989 Term — Leading Cases, 104 Harv L Rev 219, 223). Justice Brennan’s disagreement with the result was based simply upon the application of the rule, i.e., what a "reasonable reader” would have understood the statements in Milkovich to mean. The majority believed that the challenged statements could be interpreted as either stating or implying defamatory facts; Justices Brennan and Marshall believed that they could not.
II
The majority holds in the first part of its opinion, considering plaintiff’s claim under the Federal Constitution, that summary judgment was properly granted to defendant. It then asserts that Milkovich creates "uncertainty” as to whether the "context” of a statement may be considered and interprets Milkovich as stating a rule which protects opinion only in "special situations” involving "loose, figurative, hyperbolic language” (majority opn, at 245). Thus, after resolving plaintiff’s claim under the Federal Constitution, the majority reopens the issue with its interpretation as justification for its additional ruling on State constitutional grounds recognizing a greater importance for context.
Context is not controlling in this case, however, under either the majority’s narrow view of Milkovich or our State rules. The Appellate Division, in a unanimous 27-page analysis of plaintiff’s claims stated that, for the most part, the McGreal letter was a constitutionally protected expression of opinion. To the extent the court identified unambiguous assertions of fact, it found that they had not been proven false — or indeed were demonstrably true — and therefore ruled that plaintiff failed to meet its burden of proof (see, Philadelphia Newspapers v Hepps, 475 US 767, 776). We accepted its conclusion when the case was first before us and the majority again accepts it for the purpose of deciding the Federal question (see, *260 majority opn, at 245-246, 248, n 3).[1] Thus, plaintiffs claims fail regardless of the "circumstances” or "context” in which the alleged defamatory words appear.
Nevertheless, the majority proceeds to examine the context of the statements under the State Constitution because a different conclusion could conceivably emerge under Milkovich (majority opn, at 248, n 3). If certain statements in the McGreal letter alleged to be defamatory may be actionable after Milkovich the majority should identify them in its discussion of the Federal claim and deny summary judgment. That is the request made of us by the Supreme Court: examine plaintiff’s defamation claim in light of Milkovich and determine if a cause of action is stated. The majority has failed to do so, however, hypothesizing that some unspecified statement may be actionable unless considered in context under a broad State rule permitting such evaluation. Its grant of summary judgment on Federal grounds, based on a narrow view of Milkovich in which context is not controlling, is inconsistent with the discussion on State law in which context becomes critical. It leaves both grounds for the decision suspect and seriously impairs the credibility of the Court’s analysis.
¡II
Aside from these considerations, there are several institutional concerns which should be addressed.
This Court, as the highest court in the State, is primarily concerned with the institutional function of declaring and applying constitutional and common-law principles, authoritatively interpreting statutes and formulating policy on issues of State-wide concern. When the Court reviews a question of Federal constitutional law, however, it acts as part of a larger judicial system embracing not only New York but the Nation as a whole. When Federal questions are presented, its institutional functions are subordinated to the Supreme Court and it *261 acts, in effect, as an intermediate court. Notwithstanding this different role, it is important that State courts participate in the Nation’s court structure. They have much to contribute to the Supreme Court’s determination of Federal law by addressing the issues thoroughly and persuasively and providing local perspectives for the development of constitutional rules (see, Johnson v Louisiana, 406 US 356, 376; New State Ice Co. v Liebmann, 285 US 262, 311 [Brandeis, J., dissenting]). Inasmuch as the Supreme Court is charged with the ultimate responsibility for pronouncing Federal law, however, it should be given the opportunity to accept, modify or reject a State court’s determination of what the Federal Constitution requires.
Our unnecessary reliance on State law in this case frustrates that process. Under general principles, Supreme Court jurisdiction to review a Federal question fails if the decision of the State court is also based on adequate and independent State grounds (see, Michigan v Long, 463 US, supra, at 1038, n 4, 1041-1042; Fox Film Corp. v Muller, 296 US 207, 210; cf., Delaware v Prouse, 440 US 648, 651-653; and see, Ohio v Johnson, 467 US 493, 499; Comment, Ohio v Johnson: The Continuing Demise of the Adequate and Independent State Ground Rule, hi U Colo L Rev 395, 416). The Supreme Court will not review the matter because it can no longer control the litigation; its decision would constitute merely an advisory opinion. The State court’s pronouncements on Federal law, correct or not, thus become judicial dictum because they are not the dispositive reasons for the Court’s decision.
Resting the decision on dual grounds also violates established rules of judicial restraint. Traditional doctrine holds that a court should decide no more than necessary to resolve the dispute before it. Constitutional questions should be avoided if possible (see, Communist Party v Catherwood, 367 US 389, 392; People v Felix, 58 NY2d 156, 161; Matter of Beach v Shanley, 62 NY2d 241, 254). The practice of deciding a case on dual grounds, thereby insulating the Federal question from Supreme Court review has been described as "illegitimate” (see, Bice, Anderson and the Adequate State Ground, 45 S Cal L Rev 750, 757; Collins, The Once "New Judicial Federalism” and Its Critics, 64 Wash L Rev 5, 7 [quoting Bice and criticisms of the California Supreme Court’s practice of dualism by various public officials]). It is said to be not only contrary to the general rules underlying judicial restraint but also a perversion of the "new federalism”, pushing State *262 constitutional power beyond its proper limits by purporting to state Federal law but insulating the analysis from review by the Supreme Court. The inevitable consequence of dual reliance is that the Supreme Court, charged with ultimate authority in the area, loses a measure of control over the law it has created. To the extent that we declare Federal law but foreclose review, we undermine the Supreme Court’s institutional role, denying it the opportunity to harmonize divergent State court decisions or speak on issues it deems important. The result is much the same as if the four departments of the Appellate Division were to frustrate us in the performance of our institutional responsibilities by deciding State constitutional law issues and then, by procedural means, foreclosing our review of their decisions.
Whether criticisms of the practice of dual reliance are justified as a general proposition, they are valid when the procedure followed in this case is considered.[2] Our original decision contained no statement that it rested on independent State grounds (see, 74 NY2d 548). With the case in that posture, the Supreme Court granted certiorari, indicating its desire to pass on the issues of Federal law, and remitted the case to us as a matter of comity before ruling so that we might reconsider it in light of the intervening Milkovich decision. We have reviewed the appeal and concluded that under Milkovich the plaintiff has failed to satisfy its burden of proving defamation. The majority does not stop there, however. Having previously invited Supreme Court review by *263 failing to rest our decision on independent State grounds, it now changes course and blocks that review by asserting them.
The majority contends this procedure is warranted by concerns of finality and judicial economy. Those are practical concerns present in every case. They rarely justify overriding established rules of judicial restraint and they should hardly control the decision-making process in this case. If the law was such that plaintiff could prevail on Federal grounds but could not prevail on State grounds, then resort to the protection afforded by our State Constitution might be justified. But plaintiff has no cause of action on Federal grounds, even with the narrow protection the majority accords defendant under Milkovich. If, notwithstanding this holding, we had proceeded in our Federal analysis to examine the role of context in opinion cases it would represent inexcusable dictum because it would not control the outcome of the case. It becomes no less so because the discussion is cast in terms of State law.
The result of reaching both State and Federal grounds is that the discussion of Federal law, under Supreme Court precedent, is dictum because we have relied on independent State grounds. Conversely, the discussion of State grounds is largely dictum because context is not controlling in this case. The process is not in keeping with our institutional responsibility to provide stability and certainty in the development of law.
Accordingly, I concur for affirmance solely on the ground that the plaintiff’s claims are not actionable under the holding in Milkovich v Lorain Journal Co. (supra).

. For some reason, the majority believes its obligation to examine plaintiffs Federal claim is limited to reviewing the "express and implied factual assertions * * * as they were identified by the Appellate Division” (majority opn, at 248, n 3). On a motion for summary judgment, however, the Court is required to pass on the defamatory nature of all the statements alleged to be actionable. Although the majority appears to believe the Appellate Division did not perform this function, it explicitly stated that it had done so (see, 145 AD2d 114, 143 ["of the many statements cited by the plaintiff * * * there was not one that was actionable”]).

. As Judge Kaye notes (majority opn, at 251), neither the Court nor its individual Judges have consistently followed any announced standards for departing from Federal law to adopt a different State rule or settled on any preferred methodology for doing so (but see, People v P. J. Video, 68 NY2d 296). No problem is presented when, as in the first appeal in this case, we perceive Federal and State law to be the same. But when they diverge, we have followed a variety of approaches. Indeed, the Court recently has appeared to shy away from establishing any standards and, without guidance from us, parties have been free in cases asserting both Federal and State constitutional claims to rely on the general equities of the case, to appeal to the subjective views of the individual Judges on what the rule ought to be and to urge adoption of the methodology best suited to arrive at the desired result. Hopefully we will, in time, achieve an articulable consensus on how these matters should be handled. To that end, I first stated my opposition to the dual method in Matter of Patchogue-Medford Congress of Teachers v Board of Educ. (70 NY2d 57, 71 [Simons, J., concurring]) and my opposition to going beyond the necessities of the case to declare new State law in People v Vilardi (76 NY2d 67, 78 [Simons, J., concurring]).