OPINION OF THE COURT
Edgar G. Walker, J.
The defendant, Felix Reyes, is charged with one count of *477 criminal possession of a weapon in the fourth degree pursuant to section 265.01 (1) of the Penal Law. The defense moves to suppress a .38 caliber special revolver and five rounds of shells, the primary objects of the prosecution. A Mapp hearing was ordered and held before me on November 16, and December 9,1992.
The People called two witnesses, Police Officer Christopher Alfonso and Police Officer James Ventarella. Their testimony, which this court finds to be candid and credible, is summarized below.
FINDINGS OF FACT
The officers are assigned to the Highway One Motor Carrier Safety Unit, a truck enforcement unit. As they were driving northbound on Leggett Avenue, Bronx County, they observed a tractor trailer without a valid Highway Use Tax (HUT) sticker on the truck. Officer Alfonso made a U-turn and followed the truck to the next intersection on Bruckner Boulevard and Leggett Avenue. He observed the defendant, the driver of the tractor trailer, make an illegal left hand turn at the intersection. Officer Alfonso and his partner promptly pulled the vehicle over to the side of the road. Officer Alfonso asked the defendant for his license and registration which was provided. Officer Alfonso then informed the defendant that they were going to perform a safety inspection of the vehicle and directed him to step out.
After the defendant exited the vehicle, Officer Ventarella entered it for the purpose of checking the brake system. This check involves the inspection of certain gouges on the dashboard and performance of several tests to check that the lines on the braking system were functioning properly. There was no testimony that any of the tests required looking in the rear portion of the tractor.
Nevertheless, before performing any inspection or test relating to the brakes, Officer Ventarella did a "visual inspection” of the inside of the tractor. The purpose of this visual inspection, as testified to by Officer Ventarella, was to look for weapons, specifically guns and knives. In the course of his visual inspection Officer Ventarella found a gun between the rear of the center console and the sleeping berth in the rear of the tractor.
After unloading the weapon, the officers proceeded to do a thorough safety inspection of the vehicle which took approxi *478 mately one hour to complete. Neither officer testified as to any guidelines or set policy or procedures for the conduct of a safety inspection nor did the People introduce any other evidence that such guidelines exist. In fact, Officer Ventarella specifically testified that there are no guidelines and the decision as to which vehicles to inspect is solely within the discretion of the individual police officer.
CONCLUSIONS OF LAW
The People argue that once a commercial vehicle is legally stopped it may be subjected to a safety inspection and, that in this case, the gun was discovered in plain view during the course of such an inspection.
It should first be noted that the gun was discovered in a location where it might not have been noticed if Officer Ventarella had limited himself to performing a safety inspection of the vehicle. The gun was found in the rear of the cab during a search for weapons. Thus the plain view doctrine would, arguably, not apply. (Coolidge v New Hampshire, 403 US 443.) However, even if the gun would have been discovered during the course of the ensuing safety inspection, the inspection itself must be performed in accordance with constitutional standards before the plain view doctrine can be invoked.
Officer Ventarella’s entry into the tractor, for whatever purpose, constituted a government intrusion into an area in which the defendant has some expectation of privacy, however diminished, and therefore constituted a search. (People v Class, 63 NY2d 491.) While the absence of a valid HUT sticker and the illegal turn justify the stop of the vehicle, they do not, without more, justify the subsequent search which resulted in the seizure of the gun. (People v Class, supra; People v Marsh, 20 NY2d 98.)
The People rely on the provisions of 17 NYCRR 820.14 (a), adopted pursuant to Transportation Law § 140 (2) (c), to justify the police action in this case. Transportation Law § 140 (2) (c) provides: "The department [of transportation] shall have the power to examine vehicles, facilities and records subject to the provisions of this subdivision, at any time and place where they are found, to ascertain whether such rules and regulations [governing the safety of operation of motor vehicles operated for the commercial transportation of property] are being obeyed. The rules and regulations of the commissioner *479 shall provide for the inspection of all such vehicles at such periods and at such manner as the commissioner may direct, and, when adopted, shall have the full force and effect of law.” 17 NYCRR 820.14 (a) provides in relevant part: "police officers are authorized to enter upon and perform inspections of motor vehicles in operation and to stop such vehicles for the purposes of inspection, to perform inspections of motor carriers’ facilities and records at any time and place where they are found, to ascertain whether the rules and regulations of the commissioner are being obeyed and to ascertain whether such vehicles are maintained, equipped and operated in accordance with the regulations in this Part.”
This regulation, on its face, unquestionably authorizes random searches of vehicles without particularized suspicion or advance judicial oversight. In order for such a regulation to pass constitutional muster under article I, § 12 of the New York Constitution it "must provide for such certainty and regularity of application as to be a constitutionally adequate substitute for a warrant.” (People v Keta, 79 NY2d 474, 502.)
However, like the statute which was held to violate the New York Constitution in Keta (supra), this regulation does not "provide either a meaningful limitation on the otherwise unlimited discretion the statute affords or a satisfactory means to minimize the risk of arbitrary and/or abusive enforcement.” (79 NY2d, at 500.) The testimony of Officer Ventarella to the effect that the decision to perform an inspection is totally within the discretion of the individual police officer, unguided by any "set policy procedures” only serves to confirm what is readily apparent on the face of the regulation.
Searches conducted without particularized suspicion are governed by a standard of reasonableness. (Matter of Caruso v Ward, 72 NY2d 432; Matter of Patchogue-Medford Congress of Teachers v Board of Educ., 70 NY2d 57; People v Scott, 63 NY2d 518.) In Patchogue-Medford (supra), the Court of Appeals articulated a three-pronged standard for determining the reasonableness of such searches: "random searches conducted by the State without reasonable suspicion are closely scrutinized, and generally only permitted when [1] the privacy interests are minimal, [2] the government’s interest is substantial, and [3] safeguards are provided to insure that the individual’s reasonable expectation of privacy is not subjected to unregulated discretion”. (70 NY2d, at 70.)
As in People v Ingle (36 NY2d 413), in this case the first two *480 prongs are clearly met. The government’s interest in highway safety is substantial and the defendant has a diminished expectation of privacy in his vehicle. However, it is just as clear that the regulations "leave police discretion wholly untrammeled.” (36 NY2d, at 420.)
The People’s argument that, because the stop of defendant’s vehicle was lawful under Ingle (supra), the subsequent search was also lawful, is without merit. Our Constitution forbids both unreasonable searches and seizures.
It should be noted that the infirmity here is with the Commissioner’s regulations and not with the statute claimed to authorize such regulations. By authorizing rules and regulations for safety inspections "at such periods and at such manner as the commissioner may direct” the Legislature necessarily intended that such regulations meet constitutional standards.
It should be noted that the Commanding Officer of the Highway District of the Police Department had been advised by the Department’s Legal Bureau of the constitutional infirmities of 17 NYCRR 820.14. In a memorandum dated February 3, 1992, the Commanding Officer of the Legal Bureau stated: "If you wish to develop a legally defensible inspection program, I will assign a member of my staff to assist you.” Apparently the memo went unheeded.
Since the regulations authorizing Officer Ventarella’s entry into the vehicle to perform the safety inspection do not comply with constitutional standards, the gun found inside the tractor must be suppressed.