*370
 
 OPINION OF THE COURT
 

 Ciparick, J.
 

 The question this Court confronts is whether the frequency with which a random drug testing program is conducted can render the plan unconstitutional on the grounds that it is unreasonably intrusive and subjects the affected members’ reasonable expectation of privacy to unregulated discretion.
 

 I.
 

 The Commissioner of Police of the Nassau County Police Department, pursuant to 1989 Orders Numbers 16 and 27, authorized a program of drug testing, without reasonable suspicion, providing for monthly random testing of 10 members of the 100 members assigned to the Narcotics Bureau, special narcotics enforcement and the Scientific Investigation Bureau. Testing would be performed on an "independent trial” basis such that the random selection would not result in the removal of that member from the selection process for subsequent months.
 

 The President of the Police Benevolent Association (PBA) of Nassau County commenced this CPLR article 78 proceeding seeking to prohibit respondents from implementing the plan on the ground that the frequency of the testing would be impermissibly intrusive. Supreme Court dismissed the petition holding that the statistical probabilities do not render the proposed testing unconstitutional, but the Appellate Division reversed, holding that "[ajbsent some evidence that the desired objectives require the frequency of testing under the respondents’ plan and cannot be accomplished with a less stringent testing schedule, we must conclude that the affected members’ reasonable expectations of privacy are subject to unregulated discretion, and that the respondents’ plan is therefore unreasonably intrusive” (192 AD2d 655, 657).
 

 We disagree and reverse, thus upholding this random drug testing program, and dismiss the petition.
 

 II.
 

 It is well-established law that random drug screening constitutes a search and seizure within the meaning of the Federal and State Constitutions
 
 (Treasury Empls. v Von Raab,
 
 489 US 656;
 
 Matter of Caruso v Ward,
 
 72 NY2d 432). The guarantee against unreasonable searches and seizures found in both the
 
 *371
 
 State and Federal Constitutions (NY Const, art I, § 12; US Const 4th Amend) is designed to protect the personal privacy and dignity of the individual against unwarranted intrusions by the State
 
 (Matter of Abe A.,
 
 56 NY2d 288;
 
 Matter of Patchogue-Medford Congress of Teachers v Board of Educ.,
 
 70 NY2d 57, 64).
 

 A three-pronged standard of review was articulated in
 
 Patchogue-Medford
 
 as it related to all probationary teachers eligible for appointment to submit to a urine test for the purpose of detecting potential drug abuse. This Court, invalidating the plan, held that a drug screening plan must be closely scrutinized and permitted only where: (1) the individual’s privacy interests are minimal, (2) the government’s interests are substantial, and (3) safeguards are in place to ensure that the individual’s reasonable expectations of privacy are not subject to unregulated discretion
 
 (Patchogue-Medford, supra,
 
 at 70).
 

 These standards were applied in
 
 Matter of Caruso v Ward
 
 (72 NY2d 432,
 
 supra),
 
 which upheld the constitutionality of a drug testing directive issued by the New York City Police Commissioner. That program required the periodic, random urinalysis drug testing of the members of the Organized Crime Control Bureau. The Bureau was a specialized, high-risk, highly sensitive police unit made up of about 1,100 officers who were voluntarily assigned
 
 (id.,
 
 at 435). This Court held that the members had a "very diminished expectation of privacy due to their pursuit of service in the elite unit.”
 
 (Id.,
 
 at 440.) The voluntary nature of the assignment, the fact that the members were informed prior to assignment about the need for drug testing and the officers’ agreement to undergo close examination of their personal lives, their financial affairs and their professional judgment, led us to conclude that the drug testing program was "just another layer of an already heightened, persistent and employee-expected scrutiny”
 
 (id.,
 
 at 440). The third prong of the
 
 Patchogue-Medford
 
 test was not analyzed in
 
 Caruso
 
 because the matter came to this Court before the plan’s "implementing details” were formulated
 
 (id.,
 
 at 441). Thus,
 
 Caruso
 
 gives little guidance as to what constitutes sufficient procedural safeguards to avoid the experience of "unregulated discretion”.
 

 The third prong was addressed, however, in
 
 Matter of Seelig v Koehler
 
 (76 NY2d 87,
 
 cert denied
 
 498 US 847), which upheld the random drug testing program of the New York City Correction Department. In that instance, 50 officers from a
 
 *372
 
 pool of 7,200 were tested every two weeks. The third-prong safeguards or protocols included: (1) employees’ names were chosen randomly by computer, (2) a tenured officer had the right to a hearing before being discharged for refusal to comply with testing procedures, (3) state-of-the-art techniques were used to collect the specimen, insure its integrity, preserve it for challenge, and test and retest it, and (4) an employee who tested positively for drug contamination could choose another qualified laboratory to test the sample again
 
 (id.,
 
 at 95-96).
 

 Considering these factors, this Court concluded, "[t]he protocols overall allow for very little discretion and certainly not that which could be called 'unregulated discretion’ ”
 
 (id.,
 
 at 96). Similarly, in
 
 Matter of McKenzie v Jackson
 
 (152 AD2d 1,
 
 affd
 
 75 NY2d 995), this Court upheld the Westchester County Department of Corrections operational guidelines as they applied to random urinalysis testing of probationary correction officers, absent reasonable suspicion of drug use.
 

 III.
 

 At issue in this instance is the validity of the procedures promulgated by the Nassau County Police Commissioner in testing approximately 100 volunteer officers, requiring that 10 chosen randomly from the entire pool of 100 be tested each month. Statistically the system is one of "independent trials,” approved in
 
 Seelig.
 

 Officers assigned to the three special units are required to sign a form acknowledging their consent to testing prior to such assignment and to further random testing following assignment. Incumbent members of the three units would be required as well to sign a form acknowledging their consent to random testing while so assigned. Incumbent members who decline to sign such forms would be transferred out of the special units, without penalty.
 

 In this instance, just as in
 
 Caruso,
 
 those police officers who would be subject to random testing would have prior knowledge of the testing, may transfer out of the command if they object to the testing, and are voluntary members of an elite organization whose primary purpose is drug interdiction. Additionally, as in
 
 Caruso,
 
 the Nassau County Police Department has the same substantial State interest, that its elite members never take drugs, nor damage the community’s confidence in them, nor endanger each other due to impaired perception.
 
 *373
 
 The Commissioner’s order sets forth the drug testing procedures, including insuring that the sample is unadulterated, positive results are retested and the chain of custody is uninterrupted.
 

 The PBA concedes the employer’s right to implement a random drug testing program. It agrees that compelling State interests will be achieved by a random drug testing plan. The PBA further acknowledges that police officers in certain unique and specific circumstances may have a diminished expectation of privacy. Thus, the first two prongs of the
 
 Patchogue-Medford
 
 test have been satisfied.
 

 As to the third prong, that safeguards be employed to ensure that an individual’s reasonable expectation of privacy is not subject to unregulated discretion, this Court holds that the proposed protocols and procedural safeguards as articulated in
 
 Seelig
 
 have been met. Privacy rights have also been protected by allowing for the direct observation by a supervisor of the same sex. Thus, the proposed protocols are reasonable and in compliance with the rule as set forth in
 
 Seelig.
 

 Turning to the issue of "independent trial” technique, the purpose of the program is safety and deterrence. These goals are most effectively met when an individual remains within the testing pool and remains subject to random testing. By contrast, removing the tested 10 from the pool each month destroys the randomness of the program (especially after the initial months). A drug user within the ranks puts the entire unit at peril. The drug-using officer might be derelict in performing required duties as a result of impaired judgment that could endanger other officers. In
 
 Seelig
 
 this Court approved the use of the "independent trial” technique in random drug testing as a deterrent. Clearly the best deterrent occurs when an individual remains in the pool subject to additional testing on an ongoing basis, otherwise the plan would be so watered down as to be useless. Random drug testing achieves the desired objectives by inducing individuals who might otherwise engage in drug usage to refrain from such usage. Without the "independent trial” technique, some period of immunity would be created for an individual who has already been tested and with the threat of further testing removed, the motivation to abstain due to fear of detection is eliminated. The "independent trial” technique has been found to be a necessary feature of effective random testing, its validity having been upheld in
 
 Seelig.
 
 This Court finds no reason to
 
 *374
 
 distinguish this case from
 
 Seelig
 
 and upholds the "independent trial” technique reflected in the Nassau County Police Department’s proposed plan.
 

 IV.
 

 The only remaining question, then, is whether this proposed random testing program can be regarded as so excessively frequent as to be unconstitutional by subjecting the affected members’ reasonable expectation of privacy to "unregulated discretion.” The standard of reasonableness must govern. "The constitutionality of a search conducted by a public employer for 'noninvestigatory, work-related purposes, as well as for investigations of work-related misconduct, should be judged by the standard of reasonableness under all the circumstances’ as to 'both the inception and the scope of the [government] intrusion’ ”
 
 (Caruso, supra,
 
 at 437;
 
 see also, O’Connor v Ortega,
 
 480 US 709, 725-726).
 

 Because the program here is concededly a "search” for Fourth Amendment purposes, the burden is on the Commissioner to establish its reasonableness both at its "inception” and in its "scope.” The Commissioner must come forward with evidence demonstrating that his decision to implement this program and to design it, as he did, was not arbitrary. In this case, however, both the inception and the scope of the proposed program are not unlike those previously endorsed by this Court in
 
 Caruso
 
 and
 
 Seelig.
 
 Thus, in this case we conclude that the Commissioner did not act arbitrarily and has met his burden of demonstrating the program’s reasonableness, including the chosen frequency.
 

 Here, the employer has chosen a frequency that, although subjecting the employee to random drug testing at relatively frequent intervals, is nonetheless not so great and substantial an intrusion upon the employee’s privacy interests as to render it constitutionally impermissible. Clearly, a frequency may be chosen, in a given case, that might result in such a substantial intrusion upon the employee, that would render it impermissibly intrusive and warrant invalidation. This is not the case here. The frequency chosen requires that 10 officers be tested each month with all 100 members subject to testing each month, thus the maximum any employee could be tested would be 12 times a year (though on average an employee would be tested only once every 10 months). This maximum exposure to the employee is thus less than that approved in
 
 Seelig,
 
 where 50 officers out of a 7,200 person force were to be
 
 *375
 
 tested every two weeks, with all officers subject to testing each two-week period, the maximum any employee subject to being tested under that court approved plan being an improbable 26 times a year. This plan’s frequency rate, even if extended to its outer highly improbable limit of 12 times a year, represents a minimal over-all intrusion on the employee.
 

 This group of employees clearly comes within the narrow exception contemplated by
 
 Caruso
 
 of an elite corps of volunteer officers subject to extraordinary scrutiny. With all procedural safeguards in place, this plan contemplates a frequency of testing well within the standard set by
 
 Seelig,
 
 and represents a reasonable compromise between the needs of government employers to protect against drug abuse by volunteer officers assigned to highly sensitive positions and the interests of these employees in limiting intrusions upon their personal privacy. The higher standard as advanced by the Appellate Division, that an employer must first demonstrate that no lesser frequency than that selected can achieve the objectives sought, cannot be sustained. Selecting the minimal frequency of drug testing necessary to advance the employer’s goals would be a near impossible task, since demanding exactitude in the selection of a frequency for testing would require years of experience to yield any reliable information.
 

 Thus, the standard set forth by the Appellate Division must be rejected in favor of the "reasonableness” standard in determining whether frequency passes constitutional muster. In doing so we hold that the Commissioner of Police of the Nassau County Police Department has sustained his burden by a sufficient showing on the question of the reasonableness of its random drug testing program both at its inception and in its scope as furthering a compelling State interest. The presumption that warrantless intrusions without reasonable suspicion are unreasonable has been sufficiently rebutted.
 

 Accordingly, this Court holds that the Commissioner’s plan to randomly test police officers as per its 1989 Orders Numbers 16 and 27 meets all constitutional requirements, is not unreasonably intrusive and not subject to unregulated discretion.
 

 
 *376
 
 The order of the Appellate Division should therefore be reversed and the petition dismissed.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Smith and Levine concur; Judge Titone taking no part.
 

 Order reversed, with costs, and petition dismissed.