Major General Melvin C. Thrash The Adjutant General Military Department of Arkansas Camp Robinson North Little Rock, Arkansas 72118-2200
Dear Major General Thrash:
This is in response to your request for an opinion on the legality of employee drug testing. Specifically, you inquire whether the Military Department of Arkansas may require drug testing by urinalysis of new employees as a condition of employment, and under what circumstances the Department may require existing employees to submit to urinalysis. You state that your "primary concern is that the state employees [the Department] hire[s] for [its] youth program be drug free." Correspondence attached to your request also mentions employees assigned to the Department's youth training programs as an area of concern. That correspondence further cites "the requirement for law enforcement certification for a number of [Department] employees" and states that the Department believes that "drug testing for candidates and incumbents of specified positions would provide a safeguard for the well-being of students, employees, and the public."
Your request is substantially similar to the requests that prompted this office to issue Op. Att'y Gen. 91-151 and, in particular since it was addressed to the Department, Op. Att'y Gen. 90-186, copies of which are enclosed for your information.
The cases cited in the enclosed opinions as controlling precedent in this area, Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602 (1989), and National Treasury Employees Union v. Von Raab, 489 U.S. 656 (1989), remain in effect and are still the most recent pronouncements of the Supreme Court of the United States on the subject of drug testing in the employment context.[1] Briefly, Skinner and Von Raab stand for the proposition that, while drug testing involves one or more "searches" implicating the Fourth Amendment when a governmental body is involved, warrantless drug testing, even in the absence of probable cause or other particularized suspicion, is not unreasonable in situations where the government's interest involves a "special need" that goes beyond ordinary law enforcement, and the governmental interest outweighs the employee's reasonable expectations of freedom from the kind of intrusiveness involved in the case.
A court will consider all the attendant facts and circumstances in determining whether the test of Skinner and Von Raab has been met in a particular case; i.e., whether the balance favors the governmental interest or the employee's expectations of privacy. The nature of the employee's tasks, and the severity of the possible consequences if undertaken by an impaired employee, are relevant to the question of whether a "special need" is present, as is an inquiry into whether the government's claimed "special need" is pretextual, the real purpose of the testing being the enforcement of the drug laws. In addition, a court will consider whether the procurement of a warrant in the circumstances would serve its traditional purposes and would be practicable. In determining whether to dispense with the requirement of probable cause or other particularized suspicion, a court will examine the privacy interests at stake, the magnitude of intrusiveness of the search, and whether the governmental interest would be jeopardized by a requirement of individualized suspicion. Applying this balancing test to any particular set of facts is, of course, a somewhat subjective exercise, and there can be no real assurance that two courts will reach the same conclusion on the same facts. Compare Railway Labor Executives' Ass'n v.Burnley, 839 F.2d 575 (9th Cir. 1988), with Skinner, 489 U.S. 602
(reversing Burnley).
With respect to those employees of the Department for whom a "requirement for law enforcement certification" exists, and whose jobs require them to bear firearms, it is my opinion that the Department may implement a drug testing program using urinalysis that includes requirements for testing as a condition to be admitted to or continued in such position and for random testing thereafter. "[T]he public should not bear the risk that employees who may suffer from impaired perception and judgment will be promoted to positions where they may need to employ deadly force." VonRaab, 489 U.S. at 671. See also Ford v. Dowd, 931 F.2d 1286 (8th Cir. 1991) (stating that police officers who carry firearms and operate emergency vehicles fit within "safety-sensitive employee category" and thus may be subjected to drug testing without warrants and without particularized suspicion); National Federation of Federal Employees v.Cheney, 884 F.2d 603 (D.C. Cir. 1989), cert. denied, 493 U.S. 1056 (1990) (holding permissible a drug testing program applicable to army civilian police and guards); and Guiney v. Roache, 873 F.2d 1557 (1st Cir. 1989),cert. denied, 493 U.S. 963 (1989) (upholding drug testing program applicable to city policemen who carried guns). Such a program, in order to withstand scrutiny under the Fourth Amendment, should be designed to be as unintrusive as possible, and must not be applied in a discriminatory or arbitrary manner. Ford, 931 F.2d at 1290. Clear limitations, set forth in the plan, on the substances for which the specimens may be tested, and a prohibition on making test results available to prosecutors without employee consent, are also factors that suggest validity. See Von Rabb, 489 U.S. at 666 and at 672, fn. 2.
The question of employees involved in the Department's youth training programs is more difficult. Certainly the Department has some interest in ensuring that its employees who interact with members of the public are not impaired by drugs, and this legitimate interest likely is heightened when those members of the public are minors receiving training and other guidance from Department employees. It is clear that drug testing programs that apply to drivers whose vehicles carry individuals may be implemented without violating the Fourth Amendment. National TreasuryEmployees Union v. Yeutter, 918 F.2d 968 (D.C. Cir. 1990); AmericanFederation of Government Employees v. Skinner, 885 F.2d 884 (D.C. Cir. 1989), cert. denied, 495 U.S. 923 (1990). It also appears that courts might agree that when the individuals transported are children, the governmental interest is enhanced to some degree. Jones v. McKenzie,833 F.2d 335 (D.C. Cir. 1987), vacated sub nom. Jenkins v. Jones,490 U.S. 1001 (1989), modified, 878 F.2d 1476 (D.C. Cir. 1989) (upholding drug testing plan applicable to attendant on school bus transporting disabled children; court pointed out possible dire consequences if attendant dropped child or was not attentive while child crossed street).
It is unclear, however, whether a court would find a "special need" in a government's general desire to keep drug free its employees who come into contact with children in the course of their work, at least to the extent that there is no reasonable likelihood that the activities of the employees will result in physical harm to the children. In other words, the answer to this question will depend heavily upon the nature of the employees' duties and their interaction with the children. If, for example, the employees drive the children, it is quite likely that a "special need" exists. See, e.g., Yeutter, 918 F.2d 968. If the employees engage in other physically hazardous activities with the children, a "special need" may exist, depending primarily upon the gravity of the consequences of a mishap. See Skinner, 489 U.S. at 628 (finding "special need" where "even a momentary lapse of attention can have disastrous consequences"), and Jones, 833 F.2d 335 (pointing out grave physical dangers to children if affected employees were impaired). If, on the other hand, the children are transported by other persons and the Department's training programs take place strictly in a classroom setting, it seems much less likely that there is present the sort of governmental interest that will outweigh the employees' reasonable expectations of privacy. See Patchogue-Medford Congress of Teachers v.Board of Educ., 70 N.Y.2d 57, 510 N.E.2d 325, 517 N.Y.S.2d 456 (1987) (rejecting the government's interest in a drug-free environment as insufficient to overcome teachers' privacy expectations and holding unconstitutional mandatory drug testing of public school teachers). A plan motivated primarily by a generalized desire to maintain a drug-free workplace, set an example, or demonstrate that the employees of a particular governmental body are "clean" likely will not suffice under the Fourth Amendment. See Von Raab, 489 U.S. at 686-687 (Scalia, J., dissenting), Georgia Ass'n of Educators v. Harris, 749 F.Supp. 1110
(N.D. Ga. 1990) (invalidating a testing program applicable to all applicants for state employment), and Jones, 833 F.2d at 340, fn. 13 (declining to address argument that testing might be justified by concerns for children's' emotional needs during lengthy bus trip).
To the extent the Department wishes to require an employee to submit to urinalysis in the absence of a drug testing plan covering such employee, and without a warrant, it appears, first, that the employee must be in a "safety-sensitive" or other special position such that a warrantless drug testing plan applied to him could be reasonable under the Fourth Amendment.[2] Yeutter, 918 F.2d 968. Second, there must exist a particularized and reasonable suspicion that the employee uses or abuses illegal drugs. Ford, 931 F.2d at 1290. Such suspicion must be "based on specific objective facts and reasonable inferences drawn from those facts. . . ." McDonell v. Hunter, 809 F.2d 1302, 1308 (8th Cir. 1987). "[A] reasonable suspicion that an employee uses or abuses illegal drugs must be based on more than mere hunches or predispositions toward the employee." Ford, 931 F.2d at 1290.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
Enclosures
[1] The Supreme Court recently decided Vernonia School Dist. 47J v.Acton, No. 94-590, 1995 WL 373274 (U.S. June 26, 1995). In Acton, the Court upheld a school district policy under which all students wishing to participate in interscholastic athletics were required to submit to random urine testing for certain drugs. Because all athletes were subject to testing, the policy obviously did not require a finding by the district of probable cause or other individualized suspicion. In its summation of its opinion, the Court stated:
 We caution against the assumption that suspicionless drug testing will readily pass constitutional muster in other contexts. The most significant element in this case is the first we discussed: that the Policy was undertaken in furtherance of the government's responsibilities, under a public school system, as guardian and tutor of children entrusted to its care.
Acton, slip op. at 11 [footnote omitted].
Because it involves school children, not public employees, the Court's decision in Acton obviously is not direct precedent on the questions at issue here. And while Justice O'Connor's dissent characterizes the majority opinion as going beyond previous decisions allowing drug testing without individualized suspicion, nothing in the majority opinion questions the continuing validity of Skinner or Von Raab; indeed, the majority repeatedly cites Skinner and Von Raab as authority. I conclude therefore that Skinner and Von Raab remain controlling law with respect to employee drug testing, although the decision in Acton may (or may not) indicate that the Court is now generally more reluctant than in the past to find drug testing programs unconstitutional in any context, including public employment.
[2] Courts have upheld plans applicable to employees in positions involving drug interdiction, public health, and national security, as well as physical safety. See, e.g., Von Raab, 489 U.S. 656 (drug interdiction), American Federation of Government Employees Local 2391 v.Martin, 969 F.2d 788 (9th Cir. 1992) (public health), and Hartness v.Bush, 919 F.2d 170 (D.C. Cir. 1990), cert. denied, 501 U.S. 1251 (1991) (national security).