969 F.2d 788
 122 Lab.Cas. P 10,257, 7 IER Cases 970,
1992 O.S.H.D. (CCH) P 29,748
 AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, LOCAL
2391, (AFGE); American Federation National
Council of Field Labor Locals; Anne F.
Johnson; Jaime A. Alvarez,
Plaintiffs-Appellees,
v.
Lynn A. MARTIN, Secretary of the United States Department of
Labor; David J. Park; Jesus Ramos, Defendants-Appellants.
 No. 91-15829.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 9, 1992.
Decided July 7, 1992.
 
 E. Roy Hawkens, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.
 Joe Goldberg, American Federation of Government Employees, Washington, D.C., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before: BROWNING, PREGERSON, and RYMER, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 The United States Department of Labor ("DOL") appeals the district court's order granting partial summary judgment for the American Federation of Government Employees, its subordinate labor unions, and two individual DOL employees (collectively "AFGE"). AFGE filed suit in the district court seeking to enjoin the DOL from conducting random drug testing, reasonable suspicion drug testing, and accident or unsafe practice drug testing. The suit also sought a declaration that the DOL's employee drug testing plan on its face violates the Fourth Amendment. The district court approved the random testing provision of the plan without modification. It also approved the reasonable suspicion testing and accident or unsafe practice testing provisions of the plan, but with modifications. The DOL appeals only from the district court's modification of the reasonable suspicion testing provision of the plan. The DOL contends that the district court erred by holding that the Fourth Amendment bars drug testing of DOL employees in public health and safety-sensitive or security-sensitive positions based on reasonable suspicion of off-duty drug use. We agree.
 
 BACKGROUND
 
 2
 Executive Order 12564 ("Order"), issued September 15, 1986, prohibited illegal drug use by federal employees both on and off duty. Exec. Order No. 12,564, 3 C.F.R. 224 (1987), reprinted in 5 U.S.C. § 7301 note at 909-11 (1988). The Order directed all executive agencies to "develop a plan for achieving the objective of a drug-free workplace with due consideration of the rights of the government, the employee, and the general public." Id. at 909. The Order also provided that each executive agency must
 
 
 3
 establish a program to test for the use of illegal drugs by employees in sensitive positions. The extent to which such employees are tested and the criteria for such testing shall be determined by the head of each agency, based upon the nature of the agency's mission and its employees' duties, the efficient use of agency resources, and the danger to the public health and safety or national security that could result from the failure of an employee adequately to discharge his or her position.
 
 
 4
 Id. at 910. On April 27, 1988, the DOL developed a Drug-Free Workplace Plan ("Plan") pursuant to this Order.
 
 
 5
 The Plan distinguishes between DOL employment positions determined to be public health and safety- or national security-sensitive, referred to as "testing designated positions" ("TDPs"), and all other DOL employment positions. Depending on the employee's position, the Plan provides that the employee may be subject to random drug testing, reasonable suspicion drug testing, and/or accident or unsafe practice drug testing.
 
 
 6
 The only form of testing at issue in this appeal is reasonable suspicion testing of DOL employees occupying TDPs. Under the Plan, a urinalysis drug test can be administered to a TDP employee based on a reasonable suspicion of on-duty or off-duty drug use.[1] The DOL has identified five categories of employment positions as TDPs with job functions that directly relate to public health and safety or national security: (1) Mine Safety and Health Inspectors responsible for inspecting mining operations and enforcing mine safety and health standards; (2) Compliance Safety and Health Officers responsible for ensuring industry compliance with occupational safety standards and practices; (3) motor vehicle operators; (4) nurses; and (5) positions with top secret national security clearances.
 
 
 7
 The AFGE, its subordinate labor unions, and two individual DOL employees initially filed an action seeking to enjoin DOL from conducting random drug testing under its Plan. The district court denied AFGE's motion for a preliminary injunction. The AFGE was then permitted to file an amended complaint in which it sought to enjoin the DOL from conducting random testing, reasonable suspicion testing, and accident or unsafe practice testing, and to obtain a declaration that these provisions violate the Fourth Amendment.
 
 
 8
 On cross-motions for summary judgment, the district court approved the random testing provision of the Plan in its entirety. The court approved the reasonable suspicion testing provision of the Plan in part, finding that the Fourth Amendment permits such testing only when it is based on a reasonable suspicion of on-duty, and not off-duty, illegal drug use or impairment. The court also prohibited direct observation of the provision of a urine sample while conducting reasonable suspicion testing. Finally, the court approved the accident or unsafe practice testing provision of the Plan with certain modifications.
 
 
 9
 On appeal, the DOL challenges the district court's decision only insofar as it prohibits drug testing of TDP employees based on a reasonable suspicion of off-duty drug use or impairment. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.
 
 DISCUSSION
 
 10
 We review de novo the constitutionality of the reasonable suspicion provision of the DOL drug testing plan as it relates to off-duty drug use or impairment of TDP employees. See AFGE Local 1533 v. Cheney, 944 F.2d 503, 505 (9th Cir.1991). Because the AFGE has challenged this provision on its face and not as applied, we need only determine whether the DOL may ever conduct drug tests of TDP employees based on a reasonable suspicion of off-duty drug use without offending the Fourth Amendment. See Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 633 n. 10, 109 S.Ct. 1402, 1421 n. 10, 103 L.Ed.2d 639 (1989); International Bhd. of Teamsters v. Department of Transp., 932 F.2d 1292, 1298 (9th Cir.1991). " 'The challenge[ ] must establish that no set of circumstances exists under which the [provision] would be valid.' " International Bhd. of Teamsters, 932 F.2d at 1298 (quoting United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987)).
 
 
 11
 The DOL argues that because the duties of TDP employees implicate significant public health and safety or national security concerns, there is a substantial governmental interest in detecting and deterring any illegal drug use by these employees. The district court cited to National Treasury Employees Union v. Yeutter, 918 F.2d 968 (D.C.Cir.1990), to support its ruling that, regardless of the nature of the positions involved, all reasonable suspicion drug testing must be based on suspicion of on-duty and not off-duty drug use or impairment. It appears, however, that the district court misinterpreted Yeutter's holding. In Yeutter the D.C. Circuit addressed the constitutional validity of the reasonable suspicion drug testing provision of a United States Department of Agriculture ("USDA") drug testing plan. The USDA plan permitted drug testing of all USDA employees based on a reasonable suspicion of on- or off-duty drug use or impairment. The court found that employees who did not hold safety- or security-sensitive positions could only be tested under the provision based on a reasonable suspicion of on-duty drug use or impairment. Id. at 974. The court left open the question whether employees holding safety- and security-sensitive positions could be tested based on a reasonable suspicion of off-duty drug use or impairment. Thus, Yeutter does not support the district court's ruling.
 
 
 12
 We note at the outset that urinalysis drug tests necessarily invade reasonable expectations of privacy rendering them searches within the meaning of the Fourth Amendment. National Treasury Employees Union v. Von Raab, 489 U.S. 656, 665, 109 S.Ct. 1384, 1390, 103 L.Ed.2d 685 (1989); Railway Labor, 489 U.S. at 617, 109 S.Ct. at 1412; International Bhd. of Teamsters, 932 F.2d at 1299. "[T]he Fourth Amendment protects individuals from unreasonable searches conducted by the Government, even when the Government acts as an employer...." Von Raab, 489 U.S. at 665, 109 S.Ct. at 1390. The warrant and probable cause requirements of the Fourth Amendment, however, do not necessarily apply in the drug testing context. International Bhd. of Teamsters, 932 F.2d at 1299. Rather, whether the government may validly require its employees to submit to drug testing is determined " 'by balancing its intrusion on the [employees'] Fourth Amendment interests against its promotion of legitimate governmental interests.' " Railway Labor, 489 U.S. at 619, 109 S.Ct. at 1414 (quoting Delaware v. Prouse, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979)). "When the balance of [these] interests precludes insistence on a showing of probable cause, ... 'some quantum of [reasonable or] individualized suspicion' " generally must be shown before a search may be deemed reasonable under the Fourth Amendment. Id. 489 U.S. at 624, 109 S.Ct. at 1416. Where the government has a legitimate public health and safety or national security interest in confirming whether an employee is using illegal drugs on- or off-duty, the existence of reasonable suspicion weighs in favor of finding that a resulting search is reasonable. See id.; O'Connor v. Ortega, 480 U.S. 709, 726, 107 S.Ct. 1492, 1502, 94 L.Ed.2d 714 (1987) ("Ordinarily, a search of an employee's office by a supervisor will be 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct....").
 
 
 13
 The Supreme Court has upheld drug testing even absent reasonable suspicion of drug use or impairment when such testing serves "special governmental needs, beyond the normal need for law enforcement." See Von Raab, 489 U.S. at 665, 109 S.Ct. at 1390. For example, in Von Raab, the Supreme Court recognized a legitimate governmental interest in testing for off-duty drug use by United States Customs Service employees interested in transfer or promotion to positions involving exceptional duties including drug interdiction, and the use of firearms. See 489 U.S. at 668-72, 109 S.Ct. at 1392-94. The Court held that safeguarding our national borders and the public health and welfare demand "effective measures to bar drug users from positions directly involving the interdiction of illegal drugs." Id. at 670, 109 S.Ct. at 1393. These governmental interests also were held to require that those who "suffer from [drug] impaired perception and judgment will [not] be promoted to positions where they may need to employ deadly force." Id. at 671, 109 S.Ct. at 1393. The Court concluded that the government's need to conduct suspicionless searches under these circumstances outweighed the employees' privacy interests. Id. at 668, 672, 109 S.Ct. at 1391, 1394. Similarly in Railway Labor, the Court found compelling the governmental interest in preventing railroad accidents and in preserving the safety of the travelling public. These interests justified the Federal Railroad Administration's drug testing of employees performing safety-sensitive tasks who were involved in certain accidents or who violated certain safety rules. See 489 U.S. at 620-21, 633, 109 S.Ct. at 1414-15, 1421.
 
 
 14
 We have also upheld random drug testing by government agencies where public health and safety or national security concerns were implicated by the nature of the employment positions involved. In AFGE Local 1533, we held that the Fourth Amendment does not prohibit the United States Navy from conducting random urinalysis drug testing of its civilian employees who have top secret security clearances giving them access to classified information. See 944 F.2d at 508. In International Bhd. of Teamsters, we found that random drug testing of truck drivers using public highways did not offend the Fourth Amendment, despite the lack of a warrant or reasonable suspicion of drug use, because of the serious public safety risk posed by truck drivers under the influence of drugs. See 932 F.2d at 1306. In Bluestein v. Skinner, 908 F.2d 451 (9th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991), a Federal Aviation Administration order requiring random, unannounced drug testing of airline employees holding safety-sensitive positions similarly was held not to violate the employees' Fourth Amendment rights. Id. at 457.
 
 
 15
 The reasonable suspicion provision at issue in this case was implemented to deter drug use among DOL employees holding clearly specified public health and safety- or national security-sensitive positions. Thus, drug testing of TDP employees based on a reasonable suspicion of off-duty drug use promotes "special governmental needs beyond the normal need for law enforcement." The DOL plainly has an interest in preventing its public health and safety inspectors, nurses, drivers, and those in security sensitive positions from using illegal drugs on- or off-duty. The DOL may, consistent with the Fourth Amendment, test for off-duty drug use when reasonable suspicion is based on criteria set forth in section 10-A(1) of the reasonable suspicion provision of the Plan. See U.S. Dep't of Labor, Drug-Free Workplace Plan § 10-A(1).[2] Section 10-A(1) provides that reasonable suspicion testing for off-duty drug use may be based upon "[o]bservable phenomena, such as direct observation of drug use or possession and/or the physical symptoms of being under the influence of a drug." Id. The need to preserve public health and safety and national security clearly justifies conducting a search when a reasonable suspicion is based on actual observation of a TDP employee's off-duty illegal drug use or impairment. The AFGE has failed to establish that this set of circumstances would render reasonable suspicion testing for off-duty drug use by TDP employees constitutionally impermissible. Accordingly, we cannot uphold the AFGE's facial challenge to the constitutionality of the reasonable suspicion drug testing provision.
 
 
 16
 We recognize that significant privacy interests of DOL employees are infringed by urinalysis drug testing for off-duty drug use. Nevertheless, under the circumstances set forth above, we find these interests outweighed by the DOL's interest in preventing on- or off-duty drug use from impairing TDP employees in the performance of their duties. We also note that the threshold requirement of reasonable suspicion minimizes the intrusion on the employees' privacy interests. Reasonable suspicion drug testing of TDP employees is not random and unannounced. Rather, as the name suggests, such testing is based on objective evidence of on- or off-duty drug use. Furthermore, for purposes of testing for off-duty drug use under section 10-A(1), objective evidence must consist of credible eyewitness observations of illegal drug use or impairment. Finally, the Plan vests only minimal discretion in the officials charged with implementing reasonable suspicion testing. Supervisors are trained to recognize facts giving rise to reasonable suspicion. They also must document all such facts and circumstances including dates and times of off-duty drug use or impairment as reported by reliable and credible sources before recommending a drug test.
 
 
 17
 The safety- and security-sensitive nature of TDPs justifies the DOL's drug testing of TDP employees based on a reasonable suspicion arising from observed off-duty illegal drug use or impairment. We are convinced that under these limited circumstances the reasonable suspicion requirement of the DOL's Plan adequately protects its TDP employees from arbitrary and unreasonable drug testing and withstands AFGE's facial challenge. The AFGE has failed to sustain its burden of establishing that no set of circumstances exist under which the challenged provision would be valid. Thus, the challenged provision is not facially invalid under the Fourth Amendment. We therefore reverse the district court's holding only insofar as it prohibits the DOL from ever conducting urinalysis drug tests of TDP employees based on a reasonable suspicion of off-duty drug use or impairment. We emphasize, however, that our opinion does not preclude an as applied constitutional challenge to the Plan.
 
 
 18
 REVERSED.
 
 
 
 [1]
 The reasonable suspicion testing provision of the Plan provides in pertinent part:
 Reasonable suspicion testing may be based upon, among other things:
 
 
 [1]
 Observable phenomena, such as direct observation of drug use or possession and/or the physical symptoms of being under the influence of a drug;
 
 
 [2]
 A pattern of abnormal conduct or erratic behavior;
 
 
 [3]
 Arrest or conviction for a drug-related offense, or the identification of an employee as the focus of a criminal investigation into illegal drug possession, use or trafficking (the term "trafficking" shall also mean "distribution");
 
 
 [4]
 Information provided either by reliable and credible sources or independently corroborated; or
 
 
 [5]
 Newly discovered evidence that the employee tampered with a previous drug test
 Although reasonable suspicion testing does not require certainty, mere "hunches" are not sufficient to meet this standard.
 U.S. Dep't of Labor, Drug-Free Workplace Plan § 10-A.
 
 
 [2]
 For the full text of section 10-A, see note 1 supra